IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHELLE SULLIVAN and HOLDEN       )
SHERIFF, individually and on       )
behalf of all others similarly     )
situated,                          )
                                   )        1:17cv193
            Plaintiffs,            )
                                   )
      v.                           )
                                   )
LABORATORY CORPORATION OF          )
AMERICA HOLDINGS,                  )
                                   )
            Defendant.             )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This is a putative class action involving claims of unfair
and deceptive conduct related to the billing practices of Defendant
Laboratory Corporation of America Holdings ("LabCorp").  Before
the court is LabCorp's motion to dismiss the complaint and strike
class allegations.  (Doc. 11.)  The motion has been fully briefed
(Docs. 12, 20, 23), and the court held argument on December 19,
2017.  For the reasons set forth below, the motion to dismiss will
be granted, which renders the motion to strike moot.

I.    BACKGROUND

The allegations of the complaint, viewed in the light most
favorable to Plaintiffs[1] as the non-moving parties, show the

---

[1] Victoria Bouffard, a resident of New York, and Tiara Scott, a resident
of Maryland, were each initially included in the complaint as Plaintiffs.
(Doc. 1 ¶¶ 23, 26.)  However, because each has learned that their insurer
will cover the cost of all their tests, the court has granted their

following:

LabCorp is a holding company of numerous subsidiaries that provides laboratory testing services to healthcare recipients internationally. (Doc. 1 ¶ 3.) It serves more than 110 million patients annually and has "generated more revenue from laboratory testing than any other company in the world." (Id. ¶¶ 4, 36.) Its LabCorp Diagnostics segment is an independent clinical laboratory business that provides services that are the subject of Plaintiffs' complaint. (Id. ¶¶ 5, 6, 28.)

LabCorp routinely charges different customers different rates for the same services. These rates include an undiscounted retail rate (which Plaintiffs call the "rack rate"); discounted rates LabCorp has negotiated with certain third-party payors, such as insurers; a standardized rate for Medicare clients; and rates that LabCorp negotiates with certain uninsured or underinsured individuals. (Id. ¶¶ 7, 38, 97.) These rates vary greatly but tend to be much higher for the uninsured and underinsured. (Id. ¶ 42.)

Each Plaintiff is an insured who had testing performed by LabCorp and whose insurance did not cover some or all of the cost. The complaint is devoid of any allegation that either Plaintiff

motion to voluntarily dismiss their claims without prejudice. (Doc. 20 at 11 n.1; Doc. 25 at 1; Doc. 26.) Neither contends the court should address their claims further.

ordered her testing directly from LabCorp.  Rather, at least one allegation suggests that a referring physician ordered the tests on behalf of her patient (Id. ¶ 10), and a sample LabCorp invoice for Plaintiff Holden Sheriff states, "This bill is for laboratory services requested by your physician." (Doc. 20-1 at 2.)  In any event, each Plaintiff was initially invoiced the rack rate for the tests not covered by insurance.  (Doc. 1 ¶¶ 58, 68, 80, 92.) Plaintiffs are expected to pay this rate even though their insurers, or others, would have been charged a lesser amount for the same tests.  (Id. ¶¶ 56-95.)  Plaintiffs acknowledge they are liable to LabCorp for some cost, but they contend they should only have to pay the "fair market value of those specific tests" which "would be substantially similar to the rate the patient's insurer would have paid had the lab services been covered." (Id. ¶ 164.)[2]

Plaintiff Michelle Sullivan is a California resident who had thirteen tests performed by LabCorp on October 4, 2016.  (Id.) LabCorp invoiced her the aggregate rack rate for all tests, for a

---

[2] As noted infra, in order to avoid challenge on the ground that the case cannot be certified as a class action because it would require the determination of individual "reasonable rates" for hundreds or thousands of laboratory tests, Plaintiffs contend that the reasonable rate must be the amount charged to each Plaintiff's specific insurer for each test. (See Doc. 20 at 11-12 ("plaintiffs should pay the rate their Benefit Plans'[sic] would pay"); Doc. 26 at 40 ("If you have insurance, you're entitled to the insurance rate.").)  LabCorp argues that the rack rates are reasonable and, even if the court found that they were not, one reasonable rate cannot be ascribed for each patient based on his or her insurer's rate, which differs from insurer to insurer.  (Doc. 23 at 19.)

total of $992.25. (Doc. 1 ¶¶ 68-69.) The invoice did not disclose which tests were covered by her insurance, Independence Blue Cross, and, if so, how much the insurer paid for the covered tests. (Id. ¶ 71.) However, twelve of the thirteen tests were covered,[3] leaving Sullivan liable for the full rack rate of $132.00 for the uncovered test. (Id.) Sullivan has paid the balance, "in whole or in part," under protest. (Id. ¶ 75.)

Plaintiff Sheriff is a Tennessee resident who had eighteen laboratory tests conducted by LabCorp on November 22, 2016, in Burlington, North Carolina. (Id. ¶¶ 78-81; Doc. 20-1 at 2.) LabCorp invoiced her the aggregate rack rate for the eighteen tests, for a total of $2,988.00. (Doc. 1 ¶ 77.) As with Sullivan, the invoice did not state which tests were covered by her insurer, Cigna Corporation, and, if so, how much the insurer paid for the covered tests. (Id. ¶ 83.) Sheriff's insurance covered fifteen of the eighteen tests,[4] leaving her liable for the full rack rate of $1,043.79 for the three uncovered tests. (Id. ¶ 81.) She has yet to pay her invoice. (Id. ¶ 87.)

At no point before accepting the tests did either Plaintiff inquire as to the cost. (Id. ¶¶ 86, 94.) Instead, each assumed

---

[3] The aggregate rack rate for the covered tests was $746.65; the insurer's negotiated rate was $113.50. (Doc. 1 ¶ 68.)

[4] The aggregate rack rate for the covered tests was $1,944.21; the insurer paid $800.13 for them. (Doc. 1 ¶ 81.)

she would be charged "a reasonable amount." (Id. ¶¶ 86, 94.)
There is no allegation that Plaintiffs based their assumptions on
any conduct or representation by LabCorp. Nor is there any
indication of what information, if any, the health care providers
who ordered tests on behalf of any Plaintiff knew about the cost
and pricing policies of LabCorp, or whether any Plaintiff had any
discussion with any provider about the same.

Plaintiffs filed the present action on March 8, 2016. (Doc.
1.) They allege that LabCorp's practice of charging uninsured and
underinsured customers multiples over the insured pricing, failure
to disclose in advance the price of each test, and failure to
itemize invoices to show how much of each test is covered by
insurance confuse patients as to what they owe, constitute unfair
and deceptive trade practices, and lie at the root of a national
healthcare crisis. (Id. ¶ 2.) Each Plaintiff initially seeks
recovery under the North Carolina Unfair and Deceptive Trade
Practices Act ("UDTPA"), N.C. Gen. Stat. §§ 75-1, et seq. (Count
I). Alternatively, each seeks recovery under her own state's law:
Sullivan seeks recovery under the California Consumers Legal
Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq. (Count III),
and the California Unfair Competition Law ("UCL"), Cal. Bus. &
Prof. Code §§ 17200, et seq. (Count IV); and Sheriff seeks recovery
under the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code
§§ 47-18-101, et seq. (Count V). Both Plaintiffs also allege

claims of implied contract and unjust enrichment (Count VII), as well as common law fraud (Count VIII).

Plaintiffs seek to certify a national class on behalf of "all persons who were charged fees for services by LabCorp that were in excess of the negotiated or mandated fair value market rates established for those services between LabCorp and private or public health insurers." (Id. ¶ 98.) To this extent, they rely on North Carolina's UDTPA (id. ¶¶ 115–123 (Count I)), as well as the law of implied contract and unjust enrichment (id. ¶¶ 162–168 (Count VII)) and "common law fraud" (id. ¶¶ 169–179 (Count VIII)), which they contend in their briefing should be that of North Carolina, too. Plaintiffs also seek to bring their action on behalf of two sub-classes for class members made up of the two states from which they hail and under that state's law: Tennessee and Maryland. (Id. ¶¶ 99, 104.) Plaintiffs seek a declaration that LabCorp has engaged in unlawful conduct, damages, a constructive trust, an injunction, and attorneys' fees. (Id. at 38.)

LabCorp now moves to dismiss Plaintiffs' complaint for failure to state a claim upon which relief can be granted, and to strike class allegations. (Doc. 11.) The motion is fully briefed and ready for decision.

## II.  ANALYSIS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim."  Under Federal Rule of Civil Procedure 12(b)(6), however, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Bell, Twombly, 550 U.S. at 556).  A Rule 12(b)(6) motion to dismiss "challenges the legal sufficiency of a complaint considered with the assumption that the facts alleged are true."  Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted). If a complaint does not meet this standard, it should be dismissed.

As noted, each plaintiff seeks recovery under North Carolina law and alternatively under her own state's law.  The claims under North Carolina law will be addressed first, followed by the state-specific claims.

### A.  North Carolina's UDTPA

Though neither Plaintiff is a resident of North Carolina, Sullivan and Sheriff seek recovery in Count I under North Carolina's UDTPA.  LabCorp contends that North Carolina law does not apply to these out-of-state Plaintiffs' claims.

Alternatively, LabCorp argues that neither Plaintiff states a claim under the UDTPA. Plaintiffs contend there is sufficient connection to North Carolina to apply the state's law and that they have stated a claim under the act.

Whether the UDTPA applies to Plaintiffs' claims raises a difficult question. The court applies the forum state's choice of law rules, New England Leather Co. v. Feuer Leather Corp., 942 F.2d 253, 255 (4th Cir. 1991), and claims under North Carolina's UDTPA are "neither wholly tortious nor wholly contractual in nature," Bernard v. Cent. Carolina Truck Sales, Inc., 68 N.C. App. 228, 230, 314 S.E.2d 582, 584 (1984) (quoting Slaney v. Westwood Auto, Inc., 366 Mass. 688, 704, 322 N.E.2d 768, 779 (1975)). North Carolina courts have split as to the proper choice of law rule to apply to a UDTPA claim. Stetser v. TAP Pharm. Prods., Inc., 165 N.C. App. 1, 15, 598 S.E.2d 570, 580 (2004); New England Leather Co., 942 F.2d at 255. At least one panel of the North Carolina Court of Appeals followed the traditional lex loci rule, holding that "the law of the state where the injuries are sustained should govern" UDTPA claims. See Stetser, 165 N.C. App. at 15, 598 S.E.2d at 580 (quoting United Va. Bank v. Air-Lift Assocs., Inc., 79 N.C. App. 315, 321, 339 S.E.2d 90, 93 (1986)). Another panel of that same court held much earlier that "the law of the state having the most significant relationship to the occurrence giving rise to the action" should apply. Id. (quoting Andrew Jackson Sales v. Bi-Lo

*Stores, Inc.*, 68 N.C. App. 222, 225, 314 S.E.2d 797, 799 (1984)). The North Carolina Supreme Court has not resolved this split of authority. See *Window World of Baton, Rouge, LLC v. Window World, Inc.*, No. 15 CVS 1, 2017 WL 2979142, at *9 (N.C. Business Ct. Jul. 12, 2017).

The court need not delve into the lengthy analysis offered by the parties, however. That is because even assuming Plaintiffs were correct that North Carolina's UDTPA could apply to them as out-of-state consumers under the facts alleged, their claims would not survive the motion to dismiss because Plaintiffs fail to plausibly state a claim under the act.

To establish a claim under North Carolina's UPDTA, a plaintiff must allege facts plausibly showing that (1) a defendant committed an unfair or deceptive act or practice, (2) which was in or affecting commerce, and (3) proximately caused injury to the plaintiff. *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). An act or practice is unfair if it is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and is deceptive "if it has the capacity or tendency to deceive." *Ace Chem. Corp. v. DSI Transp., Inc.*, 115 NC. App. 237, 247, 446 S.E.2d 100, 106 (1994) (internal citations and quotations omitted). Whether conduct constitutes an unfair or deceptive trade practice is a question of law for the court to decide. *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C.

App. 242, 252-53, 507 S.E.2d 56, 63 (1998).

While North Carolina prohibits price gouging in the event of an emergency or an abnormal market disruption, N.C. Gen. Stat. § 75-38, the North Carolina Supreme Court has rejected a claim that excessive price alone can state a claim under the UDTPA. See Bumpers v. Cmty. Bank of N. Virginia, 367 N.C. 81, 92-93, 747 S.E.2d 220, 228-29 (2013) (noting that where there was no element of exigency, misrepresentation, or compulsion, high price alone did not violate the UDTPA). Rather, only where a customer was systematically charged more than what was contracted for and delivered has a North Carolina court found the practice unfair. Sampson-Bladen Oil Co. v. Walters, 86 N.C. App. 173, 356 S.E.2d 805 (1987) (finding unfair trade practice and affirming jury verdict where oil supplier systematically overcharged customer for two years for 2,600 gallons of oil never delivered). Plaintiffs have not cited any North Carolina authority to the contrary.

Here, neither Plaintiff argues that LabCorp took any action to induce her to order the testing or to mislead her, either affirmatively or by concealment, as to the price of the testing. Indeed, no Plaintiff claims to have even inquired as to price. Rather, Plaintiffs appear to have authorized their healthcare providers to order the testing they deemed professionally appropriate. No party has cited a North Carolina decision supporting the proposition that a service provider must disclose

10

its price to a customer before rendering its service.  The court's
own review has found no such case, either.  Thus, LabCorp was under
no duty to volunteer its prices to patients who ordered testing
through their physicians before performing laboratory testing.
Cf. Chiarella v. United States, 445 U.S. 222, 228 (1980) (noting
that at common law, fraud doctrine did not impose a duty to
disclose in the absence of a fiduciary or other similar relation
of trust and confidence); Langford v. Rite Aid of Alabama, Inc.,
231 F.3d 1308, 1313–1314 (11th Cir. 2000) (rejecting claim that
federal law obliges retailers to disclose pricing structure to
consumers); Bonilla v. Volvo Car Corp., 150 F.3d 62, 71 (1st Cir.
1998) (also finding that federal law imposes no obligation on
retailers to disclose their pricing structure to consumers, and
rejecting fraud claim based on contention that car buyers would
not have paid for accessories had they known the seller's mark-up
was so high and the accessories so minor).

Further, neither Plaintiff has made any claim of exigency or
any circumstance that would have prevented her from inquiring about
the price of her tests.  Instead, both allege that they assumed
that the prices of the tests they ordered would be reasonable,
which they contend must be the rate charged to their insurers.
(Doc. 1 ¶¶ 74, 86; Doc. 26 at 40 (arguing that the reasonable,
fair market rate must be the insurance rate).)

Thus, Plaintiffs' UDTPA claims rest on the contention that

LabCorp's effort to charge anything more than its insured rates for uninsured tests rendered the invoices unfair and/or deceptive. But there can be nothing deceptive where there is no allegation that LabCorp represented anything to any Plaintiff about its rates. On the contrary, each Plaintiff relied on her assumption – not grounded in any alleged fact – that she would be charged an insured rate for all tests, even though neither knew what that was. And Bumpers rejects the contention that mere high price alone is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

Further, Plaintiffs' claims are predicated on the conclusion that LabCorp is limited to a quantum meruit recovery for uninsured tests. Even assuming that to be true, (which is addressed in the following section), there is simply no support for the proposition that a failure to charge a rate at or below that charged each Plaintiff's insurer – the constraint Plaintiffs self-impose in order to ward off criticism that their action cannot proceed as a class because their claims would require the court to delve into a myriad of individual questions for hundreds of tests – is unfair or deceptive. Nor can it be that a business commits an unfair trade practice merely because it seeks to collect a rate that exceeds what it charges an insurer. This is especially true where, as Plaintiffs' counsel conceded at the hearing, each insurer negotiates a different rate for the same testing. (Doc. 26 at 42–

43 ("I'm sure it's the case").)

Finally, it cannot be an unfair or deceptive trade practice to disclose an insurer's adjustments on an invoice in the aggregate rather than as to each individual test. There is no allegation that the adjustments are incorrect or that LabCorp has refused to provide any further breakdown of the adjustments upon request.

Consequently, Plaintiffs fail to state a plausible claim under the UDTPA, even if applicable.[5]

---

[5] Plaintiffs filed a Suggestion of Subsequently Decided Authority (Doc. 29), noting Forth v. Walgreen Co., No. 17-CV-2246, 2018 WL 1235015 (N.D. Ill. Mar. 9, 2018). Each side argues the relevance of the case. (Docs. 30, 31.) In Forth, putative class plaintiffs (including a union welfare fund) alleged that Walgreens implemented a fraudulent dual-pricing scheme that took advantage of plaintiffs' "reasonable assumption that, because they had health insurance, they would not be paying more than direct-pay customers for their prescriptions" when, in fact, only the direct pay customers paid the lower "usual and customary" price. Id. *13. While the court dismissed certain claims, it did not dismiss, among others, a North Carolina UDTPA claim, a fraud claim under Illinois law, and claim under the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. § 17.01 et seq. (2017). The case is readily distinguishable. First, the Texas act prohibited "unconscionable actions," which are defined as "act[s] or practice[s] which, to a consumer's detriment, take[] advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." 2018 WL 1235015, at *13. This is much broader than the North Carolina UDTPA. Under this standard, the court found plaintiffs' assumption that insureds would pay the usual and customary price reasonable and sufficient to state a claim. Id. Second, the insureds alleged that the usual and customary price is known throughout the pharmaceutical industry as the price the pharmacy charges the direct-pay public and that, because the usual and customary price is used to calculate the amount of copayments, coinsurance, and deductibles, Walgreens made false statements of fact every time it reported its higher-than-insured direct-pay prices as its usual and customary prices and overcharged plaintiffs by collecting from them inflated copayments, coinsurance, and deductibles. Id. *2-*5. These allegations of false statements distinguish Forth from the North Carolina UDTPA and fraud claims before the court here.

## B. North Carolina's Implied Contract and Unjust Enrichment Law

In Count VII, Plaintiffs allege that they should only have to pay LabCorp "the fair market value" for the testing conducted and seek to invoke North Carolina unjust enrichment and quasi-contract law. (Doc. 1 ¶¶ 162-68.) Plaintiffs posit that because they had no written agreement with LabCorp, the court should impose a quasi-contract and set the price of the services at their reasonable value. As noted, during the oral argument on these motions and to rebut LabCorp's argument that this invites the court to make scores of fact-based determinations for class members on thousands of coded tests, Plaintiffs' counsel further clarified that Plaintiffs' theory of the case limits the "reasonable value" for each service to the amount each Plaintiff's insurer negotiated for each test in question. (Doc. 26 at 34-46.) According to Plaintiffs at the hearing, this is by definition the "competitive market rate" because LabCorp has already agreed with the insurers to accept these rates, notwithstanding that the amount admittedly differs for each Plaintiff depending on what rate her insurer negotiated.[6] (Id. at 41-46.) Paying more than the insured rate, Plaintiffs contend, would unjustly enrich LabCorp, because LabCorp has already agreed to provide tests for that rate. (Id. at 39-

---

[6] Plaintiffs' counsel allowed that LabCorp might be entitled to a modest adjustment to this rate if it could demonstrate entitlement. (Doc. 26 at 41-43.)

41.) Plaintiffs seek to disgorge into a common fund all payments paid in excess of the rate that would have been charged to their insurers for the services rendered. (Doc. 1 ¶¶ 164-65.)

LabCorp argues that Plaintiffs have waived the right to proceed under North Carolina law because they failed to invoke it in their complaint and, in any event, misconstrue and seek to distort it. (Doc. 23 at 8-13.) As with the prior claim, the court need not reach the conflict of law issue here because assuming, without deciding, that North Carolina law applies, LabCorp is correct and this claim should be dismissed.

In order to establish a claim for unjust enrichment in North Carolina, a plaintiff must show that "(1) plaintiff conferred a measurable benefit to defendant, (2) defendant knowingly and voluntarily accepted the benefit, and (3) the benefit was not given gratuitously." TSC Research LLC v. Bayer Chems. Corp., 552 F. Supp. 2d 534, 540 (M.D.N.C. 2008). To be sure, there can be no unjust enrichment where a plaintiff, such as Sheriff, continues to protest a bill and therefore has not made payment on it. (Doc. 1 ¶ 87.) DiCarlo v. St. Mary Hospital, 530 F.3d 255, 268 (3d Cir. 2008) (rejecting quantum meruit claim for hospital invoice where plaintiff had yet to make any payment). This fact alone precludes Sheriff's claim.

Sullivan's claim is pleaded more vaguely on this point. She alleges that "under protest," she has "made payment, in whole or

in part." (Doc. 1 ¶ 75.) It is not clear what, if anything, she allegedly paid. What she does not allege, however, is that she paid more than the fair market value of the service, which is the basis for Plaintiffs' unjust enrichment claim. On this complaint, her claim is possible, but not plausible. Francis v. Giacommelli, 588 F.3d 186, 193 (4th Cir. 2009) ("The plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully.") (internal quotation omitted).

Even if the complaint were construed to plausibly allege overpayment as to Sullivan, "more must be shown than that one party voluntarily benefited another or his property." JP Morgan Chase Bank, Nat'l Ass'n v. Browning, 230 N.C. App. 537, 542, 750 S.E.2d 555, 560 (2013). "Indeed, 'the mere fact that one party was enriched, even at the expense of the other, does not bring the doctrine of unjust enrichment into play. There must be some added ingredients to invoke the unjust enrichment doctrine.'" Crump v. City of Hickory, 240 N.C. App. 602, 772 S.E.2d 873 (2015) (internal citations omitted) (unpublished table decision). In each instance that a North Carolina court has sustained a plaintiff's claim for unjust enrichment, the plaintiff provided something to the defendant for which the defendant did not fully pay. See, e.g., TSC Research LLC, 552 F. Supp. 2d at 541 ("[T]he complaint states that Plaintiff provided non-gratuitous services which the

Defendants knowingly accepted.").

Here, Plaintiffs seem to have it backwards. They contend that LabCorp provided testing services and therefore any invoice by LabCorp against them, in order to prevent unjust enrichment, should be limited to the fair market value – "the quantum meruit of the services performed." (Doc. 1 ¶ 164.) In other words, Plaintiffs claim, in the absence of a contractual relationship between LabCorp and any customer, LabCorp can only seek to recover the reasonable value of its services. LabCorp disputes this, relying on the Restatement (Second) of Contracts § 4 for the proposition that each customer is liable for LabCorp's retail rate under a theory of implied-in-fact contract. (Doc. 26 at 9.)[7]

The resolution of this dispute, however, is unnecessary given North Carolina law on unjust enrichment and Plaintiffs' theory of the case. In reality, Plaintiffs seek to pursue an affirmative claim against LabCorp to recoup alleged overpayments based on

---

[7] The Restatement provides: "A promise may be stated in words either oral or written, or may be inferred wholly or partly from conduct." Restatement (Second) of Contract § 4 (Am. Law Inst. 1981). The comment explains: "intention to make a promise may be manifested in language or by implication from other circumstances, including course of dealing or usage of trade or course of performance." Id. cmt. a. The Restatement provides an illustration: "A telephones to his grocer, 'Send me a ten-pound bag of flour.' The grocer sends it. A has thereby promised to pay the grocer's current price therefor." Id. illus. 1. One problem with LabCorp's reliance on this illustration is that the complaint is not clear whether any Plaintiff expressly contracted with LabCorp for the services rendered. In the absence of any contract, the Restatement goes on to say, a quasi-contract (implied in law) is formed. Because the record fails to provide sufficient facts to make this distinction, the court need not resolve it now.

application of the measure of damages for unjust enrichment. They also seek to enjoin LabCorp from charging more than the fair market value – defined here as the insured value - to customers who have no written contract. (Doc. 1 ¶ 168.) This argument misconstrues the claim of unjust enrichment in North Carolina and, as best the court can determine, is unsupported in the law.

Plaintiffs are correct that the doctrine of quantum meruit - more specifically, unjust enrichment using quantum meruit as the measure of recovery - exists to "prevent the breaching party from being unjustly enriched and to restore the aggrieved party in the contract to the position he occupied prior to entry into the contract." W.F. Magann Corp. v. Diamond Mfg. Co., 775 F.2d 1202, 1208 (4th Cir. 1985). North Carolina courts have stated that "[q]uantum meruit merely seeks to return to the plaintiff the reasonable value of the services and goods provided to the defendant." Id. (emphasis added.) But here, Plaintiffs provided no service or benefit to LabCorp. Rather, it is Plaintiffs themselves who received the service. Generally, there is no claim for unjust enrichment where a plaintiff received the service she paid for and the defendant did not solicit or induce her into accepting it. See Krebs v. Charlotte Sch. of Law, LLC, No 3:17-CV-00190-GCM, 2017 WL 3880667, at *6 (W.D.N.C. Sept. 5 2017) (rejecting claim for unjust enrichment law by law students against law school and administrators where plaintiffs did not allege that

defendants actively recruited or solicited them).

Moreover, a plaintiff seeking recovery for unjust enrichment must prove the reasonable value of the services rendered. If LabCorp is limited to a quantum meruit recovery for uninsured tests it performed, as Plaintiffs contend, it must be free to demonstrate the reasonable value of those services. But under Plaintiffs' theory, that value would be artificially constrained, on a claimant-by-claimant basis, to no more than the rate each claimant's insurer negotiated for that claimant. This is fundamentally at odds with the law of unjust enrichment. Businesses reach negotiated rates in a myriad of contexts for a myriad of reasons. Cf. Langford, 231 F.3d at 1313-14 (rejecting claim that retail pharmacy defrauded uninsured customers of prescription medications by failing to disclose it was charging prices higher than those charged insured customers, and noting that differential pricing is "the norm in many industries," from airlines, to hotels, to auto sales ). The very essence of loss leader pricing, for example, is to agree to a lower pricing strategy on some items in order to attract customers who will make up for the losses on more profitable goods or services. Plaintiffs' theory is fundamentally flawed because it presupposes that the reasonable value is not based on the service rendered, but should differ for each Plaintiff based on an estoppel-type argument; is contrary to the Nation's basic free enterprise

economic system; and presumes that a negotiated rate is as a matter of law the only reasonable rate.

It is also contrary to Plaintiffs' admission at the hearing that each insurer negotiated different rates for the same tests (Doc. 26 at 42-43), which is proof that the reasonable value of such tests is a highly fact-bound determination. Cf. Doe v. HCA Health Services of Tennessee, Inc., 46 S.W.3d 191, 198 (Tenn. S. Ct. 2001) (stating that "reasonable value" of medical goods and services provided patient by hospital "is to be determined by considering the hospital's internal factors as well as the similar charges of other hospitals in the community," and citing cases); DiCarlo v. St. Mary Hosp., 530 F.3d 255, 264 (3d Cir. 2008) (noting that "[a] court could not possibly determine what a 'reasonable charge' for hospital services would be without wading into the entire structure of providing hospital care and the means of dealing with hospital solvency"); Eufaula Hosp. Corp. v. Lawrence, 32 So. 3d 30, 43 (Ala. 2009) (noting that "a determination of a reasonable fee requires an individual analysis of each medical service provided each class member"); Colomar v. Mercy Hosp., Inc., 242 F.R.D. 671, 676 (S.D. Fla. 2007) (noting that the reasonableness of a hospitals charges to a particular plaintiff is "an individualized inquiry").

Consequently, Plaintiffs' claim for quasi-contract or unjust enrichment fails, and LabCorp's motion to dismiss Count VII will

be granted.

## C. North Carolina Common Law Fraud

In Count VIII, Plaintiffs allege that LabCorp has committed fraud under North Carolina common law.  Plaintiffs contend that LabCorp is liable on two grounds.  First, they claim that LabCorp has intentionally charged and collected fees for testing in excess of the fair market – i.e., insured – rates.  (Doc. 1 ¶ 170.) Second, they argue that LabCorp's invoices are materially misleading because they do not identify specific tests rejected by insurers or the amount the insurer would have paid for the same tests had coverage not been rejected.  (Id. ¶ 171.)  LabCorp contends that neither ground constitutes cognizable fraud. Assuming again, without deciding, that North Carolina law applies to this claim, the court agrees with LabCorp that this claim should be dismissed.

Under North Carolina law, common law fraud requires "(1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party."  Conner v. Duncan, No. 1:12CV92, 2015 WL 1475718, at *4 (M.D.N.C Mar. 31, 2015).  "[I]n order for silence or an omission by the defendants to be actionable fraud, [the silence or omission] must relate to a material matter known by the defendants which they had a legal duty to communicate to the

plaintiff, 'whether that duty arose from a relation of trust, from confidence, inequality of condition or knowledge, or other attendant circumstances.'" Breeden v. Richmond Cmty. Coll., 171 F.R.D. 189, 196 (M.D.N.C. 1997) (quoting Setzer v. Old Republic Life Ins. Co., 257 N.C. 396, 399, 126 S.E.2d 135, 137 (1962)).

Here, as discussed, there is no allegation that LabCorp misrepresented or concealed its rates. Indeed, no Plaintiff claims to have inquired as to them. Also, as noted, no party has cited any North Carolina authority for the proposition that a service provider must disclose its price to a customer before rendering its service. Such a rule would be contrary to fundamental concepts of fraud law. Cf. Chiarella, 445 U.S. at 228 (noting that common law fraud doctrine imposed no duty to disclose in absence of a fiduciary or relation of trust and confidence); Langford, 231 F.3d at 1313-14 (rejecting claim that federal law obliges retailers to disclose pricing structure to consumers); Bonilla, 150 F.3d at 71 (finding no duty to disclose pricing structure to consumers and rejecting claim that buyers would not have paid had they known the seller's mark-up was so high). And absent a representation to the contrary, an allegedly high price, alone, is not the basis for a fraud claim. Cf. Bumpers, 367 N.C. at 91-92, 747 S.E.2d at 228-29 (rejecting claim that "charging closing fees roughly three times as high as the upper end of a range [plaintiffs] find to be reasonable" constitutes an unfair or deceptive act under the UDTPA,

22

which requires a lesser standard than proof of fraud).

Here, there is no claim that any Plaintiff was misled or induced into undergoing medical testing based on LabCorp's representation or omission. That Plaintiffs now claim they are surprised by, or are placed in financial difficulty because of, LabCorp's pricing does not render LabCorp's differential pricing <u>fraudulent</u>. Plaintiffs were free to ask their health care providers about the costs and insurance coverage before ordering the tests. But Plaintiffs dismiss this as "not a practical solution" and seek by this litigation to put the onus on LabCorp to preemptively decline to provide any testing a patient orders until it first determines whether that the testing is covered by insurance. (Doc. 26 at 39, 52.) There is no legal basis for this requirement, and the failure to do so, whatever it may be, is certainly not fraud.

Plaintiffs' claim that the invoices are materially misleading suffers the same fate. There is no allegation that anything on the invoices is false. Rather, Plaintiffs charge that LabCorp's invoices are misleading because they fail to break down charges and insurance credits more specifically on a test-by-test basis. But this does not render the invoices misleading. The invoices provide each patient the amount to be paid for each test, as well as a total charge. (<u>See</u> Doc. 20-1 at 2.) They also disclose the aggregate adjustment for insurance payments. (<u>Id.</u>)

Plaintiffs also allege that LabCorp's invoices fail to identify specific tests rejected by insurers or the amount the insurer would have paid for the same tests had coverage not been rejected. This, too, fails to render them false or misleading.

Finally, as noted earlier, Plaintiffs have offered no authority in North Carolina that requires a service provider to disclose the rates it charges others with whom it has negotiated discounts. To so hold would render fraudulent the business model of a vast number of businesses in the United States. See Langford, 231 F.3d 1308 at 1313-14 (rejecting fraud claim against pharmacy based on maintenance of different rates for insured and uninsured patients, noting that "[d]ifferential pricing is not a fraudulent practice" but rather "the norm in many industries"); Van Dorn Retail Mgmt., Inc. v. Klaussner Furniture Indus., Inc., 132 N.C. App. 531, 532, 512 S.E.2d 456, 457 (1999) (rejecting claim that supplier's failure to provide plaintiff the same discount it provided some others constituted an unfair or deceptive practice).

* * *

Having found that Plaintiffs cannot proceed under claims styled under North Carolina law, the court now turns to each Plaintiff's claims under her own state's law.

### D. Plaintiff Sullivan: Violations of the CLRA and UCL

In Counts III and IV, Plaintiff Sullivan seeks to pursue claims on behalf of a sub-class of persons similarly situated under

California's CLRA and UCL, respectively. The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in . . . services to any consumer," which occurs when, among other instances, a person is "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions" or "[i]nserting an unconscionable provision in the contract." Cal. Civ. Code § 1770(a). The UCL prohibits entities from engaging in unfair competition, which is defined as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. A violation of the CLRA can give rise to a violation of the UCL. <u>Durell v. Sharp Healthcare</u>, 108 Cal. Rptr. 3d 682, 692 (Cal. Ct. App. 2010). Sullivan alleges that LabCorp violated both laws in charging excessive rates for the tests her insurer did not cover and for sending her a materially misleading invoice. She argues that "the allegations are not based upon misrepresentations, but on the unconscionable practice of price gouging underinsured individuals that are entitled to the benefit of negotiated rates." (Doc. 20 at 28.) LabCorp contends that none of its conduct was unlawful under California law.

California courts have found the proper definition of "unfair" in a consumer action under the UCL to be "uncertain." <u>Durell</u>, 108 Cal. Rptr. 3d at 695-96. At a minimum, where a claim is predicated on public policy, it must be "tethered" to a specific

constitutional, statutory, or regulatory provision. Id. at 696. Under the CLRA, a consumer must show "not only that a defendant's conduct was deceptive but that the deception caused them harm." Id. at 697. Under the CLRA, a plaintiff must allege and demonstrate that she was damaged. Id. at 696-97.

Sullivan has not cited any case where a California court has found a violation of the CLRA or UCL based on high price alone. The decisions she cites where courts have found unfair and deceptive practices associated with excessive price all involve reliance on other conduct of the defendant. See, e.g., Hale v. Sharp Healthcare, 108 Cal. Rptr. 3d 669, 672 (2010) (reversing the dismissal of a UCL and CLRA claim against hospital for, among other things, high prices where the hospital advertised that it had "cost effective" services.)

Sullivan has also not provided any authority for the proposition that a service provider's practice of charging differential rates is unfair under California law. On the contrary, California courts have rejected such claims. Moran v. Prime Healthcare Management, Inc., 208 Cal. Rptr. 3d 303, 310-11 (Ct. App. 2016) (rejecting claim that charging self-pay customers more than insured patients violates the UCL), review denied (Jan. 18, 2017). Moreover, Sullivan makes no allegation that LabCorp misrepresented anything to her about its rate structure. Rather, she relies on her "assumption" that all testing would be charged

at "fair market value," which Plaintiffs contend must be the insured rate. (Doc. 1 ¶ 74; Doc. 26 at 40 (arguing that people who have insurance are "entitled to the insurance rate").) Even if that were reasonable to assume (which is highly doubtful), there is no authority for the proposition – presented under Plaintiffs' limited theory of the case - that such rates are unfair merely because they exceed the rates LabCorp negotiated for Sullivan's insurer for that testing. As with the North Carolina-based claims, Plaintiff's constrained theory of this case ties her to an unreasonable remedy that is unsupported in the law.

Sullivan relies on some California decisions that have found dismissal improper as to claims she argues are similar to hers. But those cases are readily distinguishable. For example, in Moran, a self-pay hospital patient sued his hospital for allegedly excessive charges for services. Upon his intake, he signed the hospital's pre-printed financial responsibility contract, acknowledging he was "responsible to the hospital and physician(s) for all reasonable charges." 208 Cal. Rptr. 3d at 308. The trial court dismissed the claims but the appeals court reversed, finding that the language of the contract, combined with its presentation to a vulnerable patient in an emergency room setting before the services would be given, stated a claim for procedural and substantive unconscionability under the UCL and CLRA. Id. at 314– 19. Here, Sullivan does not allege any sort of pre-printed

agreement to pay "all reasonable charges" or the exigency of an emergency room. Moreover, <u>Moran</u> was clear that "[a]llegations that the price exceeds the cost or fair value, standing alone, do not state a cause of action." <u>Id.</u> at 316 (citations and quotations omitted). As this is the substance of Sullivan's claim, <u>Moran</u> fails to support her claim.

Similarly, in <u>Hale v. Sharp Healthcare</u>, the plaintiff signed an agreement to pay the cost of medical services "in accordance with the regular rates and terms of the hospital." 108 Cal. Rptr. 3d 669, 673 (2010). When she was billed $14,447.65, she brought suit claiming, among other things, the prices were excessive and a violation of the UCL and the CLRA. <u>Id.</u> Noting that the hospital had promised to provide "cost-effective" services, the court permitted plaintiff's claim based on that representation to proceed. <u>Id.</u> at 679. Nevertheless, the court was clear to say that absent such reliance, the claim should have been dismissed. <u>Id.</u> Sullivan alleges no such reliance but bases her claim on her assumption she would be billed her insured rate, even though she concededly did not know that.

There is also no allegation that LabCorp acted in a misleading way or interacted with Sullivan in an exigent circumstance to induce her to undergo the tests. Consequently, her claim that failure to charge her the same rate for uninsured testing LabCorp negotiated with her insurer, Independence Blue Cross, fails to

state a claim under either of these laws, and LabCorp's motion to dismiss Counts III and IV will be granted.

### E. Plaintiff Sheriff: Violations of the TCPA

In Count V, Plaintiff Sheriff seeks to proceed on behalf of herself and a sub-class of Tennesseeans under the TCPA. That statute prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," which includes "[m]aking false or misleading statements of fact concerning the reasons for, existence or, or amounts price reductions. Tenn. Code § 47-18-104(11). To be liable under the TCPA, a defendant must have committed a deceptive act. McDonald's Corp. v. Shop at Home, Inc., 82 F. Supp. 2d 801, 817 (M.D. Tenn. 2000). The act does not define "deceptive," but Tennessee courts have found that non-disclosure can be a deception in violation of the TCPA. Cavette v. Mastercard Int'l, Inc., 282 F. Supp. 2d 813, 818 (W.D. Tenn. 2003) (discussing the possibility that Mastercard's non-disclosure of a currency conversion fee may constitute a deceptive act under the TCPA).

Here, Sheriff's claim fails for the same reasons Sullivan's consumer protection claims fail. Sheriff does not allege the commission of a deceptive act. And even if the court construes her claim as one of non-disclosure – that LabCorp cannot charge a rack rate it failed to disclose - the claim fails. This is because Sheriff seeks to pay only the same rate her insurer negotiated for

the testing in question.  (Doc. 26 at 40 ("If you have insurance, you're entitled to the insurance rate.").)  Constraining LabCorp's rights in this fashion is contrary to Tennessee law that in the absence of a written contractual term, a healthcare provider is at least[8] permitted to seek recovery of the "reasonable value" of its services based on a showing of its internal costs, prevailing market rates, and customary charges in the industry.  Doe, 46 S.W.3d at 198–99 (remanding declaratory judgment action by patient and spouse against hospital for determination of "reasonable value" of services provided where patient's executed financial responsibility agreement acknowledged responsibility only for "charges").

The same result obtains from consideration of her claim as to LabCorp's invoices.  Nothing on the invoices is allegedly false. The lack of specific application of insurance payments to each particular test rather than in the aggregate does not render the invoices misleading.  The prices reflected on LabCorp's invoice are its rack rate prices for the tests Sheriff received.  The fact that Sheriff must pay more than an insurance company or anyone else who has negotiated another rate for the same tests does not render the billing unfair or deceptive.

---

[8] The court assumes, without deciding, that no contractual remedy exists. The complaint is devoid of any reference to any contractual arrangement between any Plaintiff and either her health care provider who apparently ordered the LabCorp testing or LabCorp itself.

As a result, Sheriff cannot state a claim upon which relief can be granted under the TCPA, and LabCorp's motion to dismiss Count V will be granted.

## F. Motion to Strike Class Allegations

LabCorp also moves to strike Plaintiffs' allegations seeking class treatment, principally on the grounds that Plaintiffs' claims raise a myriad of individualized questions of fact on issues of liability and damages. Plaintiffs respond in part that such a motion is premature and should be determined on a more developed record. (Doc. 20 at 31.)

Here, Sullivan and Sheriff have failed to state a claim upon which relief can be granted. As neither has a viable claim, there are no Plaintiffs left in the litigation. "As a general rule, when the named plaintiff in a class action settles his or her individual claims or they become moot prior to the district court certifying a class, the district court should dismiss the class claims as moot because there is no case or controversy under Article III of the United States Constitution." Stewart v. Legal Helpers Debt Resolution, PLLC, No. 2:11CV26, 2014 WL 31797, at *1 (W.D.N.C. Jan. 6, 2014) (collecting cases).

Plaintiffs have not identified any exception to this rule applicable to them (such as the claims being transitory and evading review). In limited situations, courts have allowed a plaintiff to remain in the action to pursue class claims even though the

substantive claims were dismissed.  Cf. United States Parole Comm'n v. Geraghty, 445 U.S. 388, 408-09 (1980) (limiting holding to permit plaintiff to appeal denial of motion to certify class); Deposit Guaranty Nat'l Bank v. Roper, 445 U.S. 326, 336-40 (1980) (finding case or controversy existed where settling plaintiff sought to appeal denial of class certification motion in the interest of shifting his fees and costs to successful class litigants); Lusardi v. Xerox Corp., 975 F.2d 964, 975 (3d Cir. 1992) (permitting plaintiff whose claims expired to remain in case in a representative capacity to argue pending motion to certify class).

These circumstances are distinguishable from this case. Here, no Plaintiff has moved for class certification.  Even though Bouffard's and Scott's claims have been dismissed as moot, their claims nevertheless are identical to those of the remaining Plaintiffs that were dismissed on the merits for failing to state a claim upon which relief can be granted.  There is therefore no need to address the questions raised by the class action allegations.  While it is doubtful that any other class member could overcome the pleading deficiencies inherent in the claims alleged, because Plaintiffs have not addressed this question, the court will dismiss the action without prejudice.

G.    **Leave to Amend**

Plaintiffs state that "[i]n the event the Court dismisses any part of the Complaint, plaintiffs respectfully request leave to amend." (Doc. 20 at 43.) However, Plaintiffs have not filed a motion to amend and do not offer any proposed amended complaint. LabCorp has not addressed this eventuality but challenges the merits of whether Plaintiffs can meet Rule 23's requirements.

Under Federal Rule of Civil Procedure 15(a)(2), once 21 days elapses from service of a motion to dismiss, a plaintiff may amend a pleading only with the opposing party's consent or leave of court. Leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend will be denied only if (1) the amendment would prejudice the opposing party, (2) there is bad faith on the part of the moving party, or (3) the amendment would be futile. Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc).

While leave may be freely granted, a "request for a court order must be made by a motion," which must state the grounds for seeking the order and the relief sought. Fed. R. Civ. P. 7(b)(1). This district's local rules require that a separate motion for leave be filed and a proposed amended pleading be attached to the motion. L.R. 15.1. The purpose is to avoid having cases thrust into limbo on such generalized requests that may later prove unsupported. Robinson v. Pepsi Bottling Grp., No. 1:13CV729, 2014 WL 2048127, at *4 (M.D.N.C. May 19, 2014). Therefore, a request

for leave to amend conditioned on the court's ruling made at the end of a plaintiff's brief opposing a motion to dismiss is not a proper motion, and a district court may deny the request on this ground alone. See Cozzarelli v. Inspire Pharm. Inc., 549 F.3d 618, 630-31 (4th Cir. 2008); Intellectual Ventures I LLC v. Bank of Am., Corp., No. 3:13-CV-358-RJC-DSC, 2014 WL 868713, at *4 (W.D.N.C. Mar. 5, 2014). It is also within the court's discretion to deny a motion for leave to amend where the moving party fails to comply with Local Rule 15.1. See U.S. ex rel. Rostholder v. Omnicare, Inc., 745 F.3d 694, 703 (4th Cir. 2014).

Here, Plaintiffs have not filed a motion to amend, nor have they attached a proposed amended complaint. Even though it is difficult to imagine how any other putative class member would be able to articulate a similar claim that would avoid the fatal deficiencies of the current complaint, Plaintiffs have not addressed futility, nor can the court say it is so at this stage. Accordingly, Plaintiffs' request for leave to amend will be denied, but the complaint will be dismissed without prejudice. Cf. United States ex rel. Radcliffe v. Purdue Pharma L.P., 737 F.3d 908, 920 (4th Cir. 2013) (noting that dismissal with prejudice would be improper where amendment would not be futile or otherwise improper).

## III. CONCLUSION

For the reasons stated, the court finds that Plaintiffs'

complaint fails to state a claim upon which relief can be granted.

IT IS THEREFORE ORDERED that LabCorp's motion to dismiss (Doc. 11) is GRANTED and Plaintiffs' complaint (Doc. 1) is DISMISSED WITHOUT PREJUDICE.  LabCorp's motion to strike class allegations is DENIED WITHOUT PREJUDICE as MOOT.

                                   /s/   Thomas D. Schroeder
                                   United States District Judge

March 28, 2018