IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SHERYL ANDERSON, MARY CARTER,    )
TENA DAVIDSON, ROBERT            )
HUFFSTUTLER, RAMZI KHAZEN,       )
CHAIM MARCUS, LILY MARTYN,       )
JONAH MCCAY, HOLDEN SHERIFF,     )
VICTORIA SMITH, MICHELLE         )
SULLIVAN, SHONTELLE THOMAS,      )
JOSEPH WATSON, and MICHAEL       )
WILSON, individually and on      )
behalf of all others similarly  )
situated,                        )
                                 )
                Plaintiffs,      )
                                 )
        v.                       )        1:17cv193
                                 )
LABORATORY CORPORATION OF        )
AMERICA HOLDINGS,                )
                                 )
                Defendant.       )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief District Judge.

This putative class action challenging the billing practices of Defendant Laboratory Corporation of America Holdings ("LabCorp") returns to the court on LabCorp's motion to dismiss Plaintiffs' amended complaint or alternatively to strike its class allegations. (Doc. 45.) For the reasons set forth below, the motion to dismiss will be granted in part and denied in part, and the motion to strike will be denied.

**I.   BACKGROUND**

The allegations of the 555-paragraph amended complaint,

viewed in the light most favorable to Plaintiffs as the non-moving parties, show the following:

LabCorp provides laboratory testing services to healthcare recipients internationally. (Doc. 42 ¶ 1.) It has more than 115 million patient encounters annually and has "generated more revenue from clinical lab testing services than any other company in the world." (Id.) Its "LabCorp Diagnostics" segment is an independent clinical laboratory business that provides the services that are the subject of Plaintiffs' amended complaint. (Id. ¶¶ 44-45.) LabCorp's customers are managed care organizations, biopharmaceutical companies, governmental agencies, physicians and other healthcare providers, hospitals, employers, patients, and consumers. (Id. ¶ 47.)

LabCorp routinely charges different customers different rates for the same services. These rates include an undiscounted retail rate, which Plaintiffs variously term the "fee schedule rate," "list price," and "chargemaster rate" (hereinafter, "list price"[1]); the discounted rates LabCorp has negotiated with certain third-party payors, such as insurers; a standardized rate for Medicare clients; and rates that LabCorp negotiates with certain uninsured or underinsured individuals. (Id. ¶¶ 41, 48-49, 70-71, 87, 211.)

---

[1] In its previous opinion in this case, the court referred to this rate as the "rack rate," tracking Plaintiffs' terminology in the original complaint. (Doc. 32 at 2.)

These rates vary greatly, but the list prices tend to be much higher than the other rates. (Id. ¶¶ 5, 469.)

There are fourteen Plaintiffs. (Id. ¶¶ 23–36.) Their common complaint is that they were provided services by LabCorp for which they were charged the list price, which they allege is grossly too high, without any prior agreement as to price. Some Plaintiffs — Michelle Sullivan, Mary Carter, and Chaim Marcus — arranged for their diagnostic testing at a LabCorp facility, presumably in their states of residence, California, Maryland, and New Jersey, respectively.[2] (Id. ¶¶ 24, 28, 33, 149, 227, 323.) Others, including Tena Davidson (resides in Florida), Shontelle Thomas (resides in Tennessee), and Lily Martyn (resides in New York but had services performed in North Carolina), authorized their physicians to order laboratory testing without knowing what lab would do the work. (Id. ¶¶ 168–170, 240–42, 345–47.) Still others, including Sheryl Anderson (resides in Alabama) and Ramzi Khazen (resides in Texas), had blood drawn by their health care providers who sent the specimens to LabCorp without advising either Plaintiff that the sample was being sent to any laboratory testing company. (Id. ¶¶ 121–25, 203–05.) At the time the services were rendered, none of these Plaintiffs had an express agreement with

---

[2] Unlike the other Plaintiffs, Marcus procured testing services for his two sons, not himself. (Doc. 42 ¶¶ 225–31.) LabCorp has not argued that this fact makes any difference. (Doc. 46 at 7 n.1.)

LabCorp to pay the list prices LabCorp subsequently charged.[3] (Id. ¶ 111.) Most Plaintiffs had health insurance, but the relevant testing performed by LabCorp was not covered by their policies; Martyn and Thomas were uninsured. (Id. ¶¶ 122, 148, 167, 176, 203, 225–26, 239, 253, 278, 297, 322, 344, 360, 379.) As a result, Plaintiffs were charged LabCorp's list prices. Some Plaintiffs paid the charges under protest, while others have refused to pay.

The amended complaint expands on the original complaint in this case that made similar allegations. On March 28, 2018, the court granted LabCorp's motion to dismiss the original complaint in a memorandum opinion and order finding that the allegations failed to state a claim upon which relief could be granted. See Sullivan v. Lab. Corp. of Am. Holdings, No. 1:17cv193, 2018 WL 1586471 (M.D.N.C. Mar. 28, 2018). On August 10, 2018, after the court granted leave, Plaintiffs filed an amended complaint. (Doc. 42.) The amended complaint brings eleven claims, each on behalf of a putative class. In Count I, Plaintiffs seek a declaratory judgment that they never contractually assented to LabCorp's list prices, and therefore that LabCorp's right of recovery against them for the relevant laboratory testing services is limited to an implied-contract recovery of the "reasonable value" of the

---

[3] Carter did sign a document authorizing "up to $484" in charges for her testing. (Doc. 42 ¶ 156.) However, she was then billed $711. (Id. ¶ 157.) Carter only challenges the additional $227 charged over the $484 she had agreed to pay. (Id. ¶ 163.)

services rendered.  (Id. ¶¶ 466–68.)  Further, Plaintiffs seek a declaration that LabCorp's list prices exceed the "reasonable value" of its services.  (Id. ¶ 470.)  In Count II, as to all Plaintiffs who paid LabCorp's list prices, Plaintiffs seek to recoup the amounts they paid above the "reasonable value" of the services rendered.  (Id. ¶¶ 480–82.)  In Counts III–XI, Plaintiffs allege that LabCorp's billing practices violate various consumer protection statutes prohibiting unfair or deceptive trade practices in North Carolina, Alabama, California, Florida, Maryland, New Jersey, Tennessee, and Texas.

LabCorp now moves to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), largely on the basis that Plaintiffs have failed to correct the defects of the original complaint, as laid out in the court's previous memorandum opinion and order in this case.  Plaintiffs contend in response that they have rectified any defects in the original complaint by recharacterizing their implied-contract theory, adding a declaratory judgment claim, and backing off their earlier insistence that the "reasonable value" of LabCorp's services is necessarily the rates LabCorp negotiates with insurers.  The court held argument on July 16, 2019, and the motion is ready for decision.

## II. ANALYSIS

### A. Motion to Dismiss

In order to survive a Rule 12(b)(6) challenge, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable," demonstrating "more than a sheer possibility that a defendant has acted unlawfully." Id.

### 1. Implied-Contract Declaratory Judgment Claim

In the amended complaint, Plaintiffs "seek a declaratory judgment[4] that a contract implied-in-law (also referred to as a quasi-contract . . .) or a contract implied-in-fact with an omitted essential term (price) exists between LabCorp and each

---

4 Plaintiffs rely on N.C. Gen. Stat. § 1-253, which provides:

> Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

LabCorp has not challenged the propriety of declaratory judgment claims per se in the context of this case.

Plaintiff and Class member."[5] (Doc. 42 ¶ 467 (emphasis omitted).) In its briefing, LabCorp starts its attack on this claim with the assumption that the court "has already held [in its memorandum opinion and order dismissing Plaintiffs' original complaint] that Plaintiffs cannot state a claim using the law of quasi-contract." (Doc. 46 at 10.) LabCorp proceeds to argue that Plaintiffs' implied-in-fact contract theory also fails because "North Carolina law requires a meeting of the minds for formation of a valid and enforceable agreement," (id. at 13 (emphasis omitted)) and Plaintiffs have admitted that "there was no mutual agreement or intent to promise between LabCorp and any Plaintiff . . . prior or subsequent to the performance of the clinical lab testing services at issue herein."[6] (Doc. 42 ¶ 466.) Moreover, argues LabCorp, to the extent there ever could have been any agreement on price, it could only have been on the list price LabCorp always charges to

---

[5] As previously noted, Plaintiffs also wish to bring each of their claims on behalf of a class. The class allegations will be treated separately below pursuant to LabCorp's motion to strike.

[6] First, LabCorp argues that there is no implied-in-fact contract formed where there is no meeting of the minds on price. See, e.g., Rider v. Hodges, 804 S.E.2d 242, 246 (N.C. Ct. App. 2017) ("A contract for service must be certain and definite as to the nature and extent of . . . the compensation to be paid, or it will not be enforced." (quoting Croom v. Goldsboro Lumber Co., 108 S.E. 735, 737 (N.C. 1921)) (emphasis omitted)). Plaintiffs expressly allege that there was no meeting of the minds on price. See, e.g., (Doc. 42 ¶ 12). Second, looking beyond price, LabCorp points out that "many Plaintiffs disclaim having any knowledge of or interaction with LabCorp whatsoever prior to performance of the services." (Doc. 46 at 14.)

consumers in Plaintiffs' position.[7]  Plaintiffs contend that it is
possible to have an implied-in-fact contract absent agreement on
price, and that the remedy for a breach of such an implied-in-fact
contract is the "reasonable value of the services" contracted for.
Ellis Jones, Inc. v. W. Waterproofing Co., Inc., 312 S.E.2d 215,
218 (N.C. Ct. App. 1984).[8]  Plaintiffs conclude that "LabCorp is
entitled only to the reasonable value of its services regardless
of whether a contract implied-in-law (a quasi-contract), or a
contract implied-in-fact with an open price term governs." (Doc.
47 at 16.)

The similarity in nomenclature between implied-in-fact and
implied-in-law contracts belies a significant doctrinal
distinction in North Carolina law.  An implied-in-fact contract
"exists by virtue of the parties' conduct, rather than in any
explicit set of words."  Kiousis v. Kiousis, 503 S.E.2d 437, 440

---

[7] LabCorp also argues that Plaintiffs' implied-contract claims "fl[y] in
the face of this Court's previous holding that 'LabCorp was under no
duty to volunteer its prices to patients who ordered testing through
their physicians before performing laboratory testing.'" (Doc. 46 at
18 (quoting Doc. 32 at 11) (emphasis omitted).  This is a selective
reference to a phrase from the court's statutory analysis.  That LabCorp
had no affirmative legal duty to disclose its list prices to Plaintiffs
does not necessarily mean that LabCorp has the legal right to make
Plaintiffs pay those list prices in all instances, including where
LabCorp allegedly did not disclose them to customers.

[8] Plaintiffs also cite a North Carolina statute adopting a provision of
the Uniform Commercial Code that permits formation of contracts for goods
"even though the price is not settled."  See (Doc. 47 at 16 (citing N.C.
Gen. Stat. § 25-2-305)).  Because the instant case involves the provision
of services, not goods — as counsel for LabCorp acknowledged at the
hearing — the cited provision is inapt.

(N.C. Ct. App. 1998). "However, although its terms may not be expressed in words, or at least not fully in words, the legal effect of an implied in fact contract is the same as that of an express contract in that it too is considered a real contract or genuine agreement between the parties." Id. (internal quotation marks omitted). Unlike implied-in-fact contracts, "[a] quasi contract or a contract implied in law is not a contract. The claim is not based on a promise but is imposed by law to prevent an unjust enrichment." Booe v. Shadrick, 369 S.E.2d 554, 556 (N.C. 1988). "In order to establish a claim for unjust enrichment in North Carolina, a plaintiff must show that '(1) plaintiff conferred a measurable benefit to defendant, (2) defendant knowingly and voluntarily accepted the benefit, and (3) the benefit was not given gratuitously.'" Sullivan, 2018 WL 1586471, at *6 (quoting TSC Research LLC v. Bayer Chems. Corp., 552 F. Supp. 2d 534, 540 (M.D.N.C. 2008)). Under the doctrine of quantum meruit, "the measure of damages for unjust enrichment is the reasonable value of the goods and services to the defendant." Booe, 369 S.E.2d at 556; see also Forsyth Cty. Hosp. Auth., Inc. v. Sales, 346 S.E.2d 212, 214 (N.C. Ct. App. 1986) ("Failure to agree on the amount of compensation entitles the physician to the reasonable value of his services . . . .").

Because LabCorp has not shown that Plaintiffs failed to plausibly plead a declaratory judgment claim based on principles

of quasi-contract, the court need not reach the parties' extensive arguments regarding implied-in-fact contract doctrine.[9] LabCorp's argument as to Plaintiffs' request for a declaratory judgment that LabCorp's remedy is limited to a quasi-contract theory of recovery is conclusory and does not address whether Plaintiffs have met the three-factor test for unjust enrichment laid out above. Instead, LabCorp merely asserts that the court "has already held that Plaintiffs cannot state a claim using the law of quasi-contract." (Doc. 46 at 10); see also (id. at 12, 14–15). This is not the case. Nowhere in its rejection of Plaintiffs' "affirmative claim against LabCorp to recoup alleged overpayments based on application of the measure of damages for unjust enrichment," Sullivan, 2018 WL 1586471, at *7, did the court state that Plaintiffs could not appeal to the law of quasi-contract on some other type of claim.

The court's prior opinion cited two grounds for rejecting Plaintiff's quasi-contract recoupment claim. First, the court

---

[9] Resolving this latter dispute would require reconciling what appears, at least at first glance, to be conflicting decisions from North Carolina courts. In some cases, North Carolina courts have apparently recognized implied-in-fact contracts for services despite no agreement on price. See, e.g., Ellis Jones, 312 S.E.2d at 218. In other cases, North Carolina courts have rejected the proposition that any contract for services can be formed without agreement on price. See, e.g., Rider, 804 S.E.2d at 246 ("[T]he [plaintiffs'] claim that [the defendant] breached a contract also fails because the parties never reached a meeting of the minds with regard to the compensation [the defendant] was to be paid for his landscaping services. Compensation is an essential element to a contract for services. Here, there was no agreement as to price, and therefore there was no enforceable contract." (citation omitted)).

found that North Carolina courts have only applied unjust enrichment doctrine to situations where a "plaintiff provided something to the defendant for which the defendant did not fully pay" — not situations where a plaintiff pays a defendant for a service and seeks return of some of the payment. Id. at *6. The court concluded that Plaintiffs were attempting to apply the law "backwards," thus suggesting that, if anything (e.g., if there were no express contract), it would be LabCorp that may have an unjust enrichment remedy against a patient who failed to pay for services rendered. Id. Second, the court rejected Plaintiff's argument that the rate LabCorp charges third-party payors "is as a matter of law the only reasonable rate." Id. at *7. Plaintiffs' new declaratory judgment claim, however, is not an attempt to use quasi-contract doctrine to recoup overpayments. Instead, Plaintiffs request a declaration that LabCorp's remedy against customers who have not paid its list prices sounds in quasi-contract and is therefore limited to recovery in *quantum meruit*. Moreover, Plaintiffs have backed off of their original insistence that the rate LabCorp charges third-party payors is necessarily the reasonable value of its services in every case. See, e.g., (Doc. 42 at 110). While Plaintiffs certainly offer little insight into how they will ultimately propose to calculate reasonable value, see id. at ¶ 110 ("Plaintiffs also anticipate relying upon an expert to analyze the private third-party payer and government

payer data to develop a formula to calculate the market rate for any given clinical lab test."), they have untethered themselves from their original, fatally-constrained theory of reasonable value.[10]

At the motion hearing, LabCorp expressed its view that the parties have an implied-in-fact contract for LabCorp's list price.[11]  However, LabCorp admits in briefing that "the facts alleged allow for [the] possibilit[y] . . . [that] no contract exists" between the parties.  (Doc. 46 at 12); <u>see also</u> <u>id.</u> ("Plaintiffs fail to plead the existence of an implied-in-fact contract.").  Because the court takes Plaintiffs' plausibly-pleaded factual allegations as true at this stage and construes them in the light most favorable to Plaintiffs, LabCorp's contention that an implied-in-fact contract exists for its list

---

[10] Whether this creates an insurmountable impediment to their effort to certify a class remains to be determined.

[11] The parties agreed at the hearing that if an implied-in-fact contract does appear from the evidence, quasi-contractual recovery would be precluded.  This conclusion appears to accord with North Carolina law, despite some contrary statements.  <u>Compare</u> <u>Whitfield v. Gilchrist</u>, 497 S.E.2d 412, 415 (N.C. 1998) ("[Q]uantum meruit is not an appropriate remedy when there is an actual agreement between the parties."), <u>and</u> 1 Richard A. Lord, <u>Williston on Contracts</u> § 1:6 (4th ed.) ("A court properly resorts to quasi-contract only in the absence of an express contract or contract implied-in-fact."), <u>with</u> <u>Hall v. Mabe</u>, 336 S.E.2d 427, 429 (N.C. Ct. App. 1985) ("[P]laintiff's evidence showed an agreement implied in fact, not an express contract, and an implied agreement does not bar a claim based on unjust enrichment."), <u>and</u> 1 John N. Hutson Jr. & Scott A. Miskimon, <u>North Carolina Contract Law</u> § 2-5 (2001) ("[A]lthough an express contract will bar a claim based on a contract implied in fact, a contract implied in fact does not bar a claim based on a contract implied in law.").

price will depend on factual development.

LabCorp cites several hospital rate cases for the proposition that it has a contract with Plaintiffs for its list price, but all are distinguishable from the facts alleged here. See DiCarlo v. St. Mary Hosp., 530 F.3d 255 (3rd Cir. 2008); Allen v. Clarian Health Partners, Inc., 980 N.E.2d 306 (Ind. 2012); Banner Health v. Med. Sav. Ins. Co., 163 P.3d 1096 (Ariz. 2007). In each of these cases, the patients signed an express agreement to pay the hospital, and the court construed that written contract to reference the hospital's list prices. See DiCarlo, 530 F.3d at 259, 264 (contract stated patients "guarantee[d] payment of all charges and collection costs for services rendered" and court found that "'all charges' unambiguously can only refer to [the hospital's] uniform charges set forth in its Chargemaster"); Allen, 980 N.E.2d at 309, 311 (contract stated patients "guarantee[d] payment of the account" and court found that "Patients' agreement to pay 'the account' in the context of [the hospital's] contract to provide medical services is not indefinite and refers to [the hospital's] chargemaster); Banner Health, 163 P.3d at 1098, 1100 (some contracts stated patients agreed to "pay the hospital[']s usual and customary charges," while others stated patients agreed to "pay the account" — court found the contract "incorporated" Arizona's hospital price regulation scheme and

therefore referred to the prices set via that scheme).[12]  No written contract is alleged here.  Nor does LabCorp attempt to address the hospital rate cases reaching the opposite result.  <u>See</u> <u>Doe v. HCA Health Services of Tenn., Inc.</u>, 46 S.W.3d 191, 194, 197 (Tenn. 2001) (contract stated patients agreed to be "financially responsible to the hospital for charges" and court found the contract unenforceable because "the price term . . . is indefinite").

In conclusion, nothing in the court's prior memorandum opinion and order bars Plaintiffs' claim seeking a declaratory judgment that LabCorp is limited to a quasi-contract theory of recovery against Plaintiffs, and LabCorp offers no other persuasive reason that the claim should fail at this early stage. The motion to dismiss will therefore be denied as to Count I.

### 2.    Implied-Contract Recoupment Claim

Unlike Plaintiffs' declaratory judgment claim, Plaintiffs' recoupment claim is substantively the same one the court previously rejected.   Plaintiffs once again assert a theory of unjust

---

[12] Moreover, these cases were decided in "the peculiar circumstances of hospitals," where the contractual language used was "the only practical way in which the obligations of the patient to pay can be set forth, given the fact that nobody yet knows just what condition the patient has, and what treatments will be necessary to remedy what ails him or her."  <u>DiCarlo</u>, 530 F.3d at 263–64.  That may not be the case here, where patients or their doctors order specific laboratory testing from LabCorp.

enrichment[13] never before recognized by a North Carolina court:
that — absent fraud or mistake of fact — a person who has <u>received</u>
services and has knowingly paid the price demanded for those
services can sue for unjust enrichment to recoup whatever part of
the price the defendant could not have obtained if it had instead
sued the plaintiff for unjust enrichment.[14] <u>See</u> <u>Sanders v. Ragan</u>,
90 S.E. 777, 778 (N.C. 1916) (creating equitable exceptions to the
normal requirements of unjust enrichment claims where payment was
made "under a mistake of fact" or "was induced . . . by the
[defendant's] fraud").

As the court previously noted, North Carolina courts have
generally applied the doctrine of unjust enrichment to suits
"seek[ing] to return to the plaintiff the reasonable value of the
services and goods provided <u>to the defendant</u>." <u>Sullivan</u>, 2018 WL
1586471, at *7 (quoting <u>W.F. Magann Corp. v. Diamond Mfg. Co.</u>, 775

---

[13] Plaintiffs' one-sentence argument also references an alternative claim
"under a theory of breach of implied contract." (Doc. 47 at 22.) If
"implied contract" here references implied-in-law contracts, then it is
duplicitous of Plaintiffs' unjust enrichment claim. <u>See</u> <u>Whitfield</u>, 497
S.E.2d at 414–15 ("<i>Quantum meruit</i> is a measure of recovery for the
reasonable value of services rendered in order to prevent unjust
enrichment. It operates as an equitable remedy based upon a quasi
contract or a contract implied in law." (citations omitted)). If it
references implied-in-fact contracts: Plaintiffs represented at the
motion hearing that "there is no contract here" because "[t]here's no
agreement on price." <u>See also</u> (Doc. 42 ¶ 466 ("[T]here was no mutual
agreement or intent to promise between LabCorp and any Plaintiff or
member of the Class prior or subsequent to the performance of the
clinical lab testing services at issue herein.")).

[14] This claim is only brought on behalf of those Plaintiffs (and purported
class members) who actually paid LabCorp's list prices.

F.2d 1202, 1208 (4th Cir. 1985)).  Here, LabCorp provided a service

to Plaintiffs, not the other way around.  See Krebs v. Charlotte

Sch. of Law, LLC, No. 3:17-cv-00190-GCM, 2017 WL 3880667 (W.D.N.C.

Sept. 5, 2017) (finding that a "[p]ayment . . . cannot be unjust

if the [plaintiffs] received the benefit for which they paid" and

rejecting "[a]ny inquiry into the . . . value of the services

provided" once payment has been made).  Thus, even if — assuming

that Plaintiffs succeed in showing that only a quasi-contract

exists between the parties — LabCorp's remedy against those

Plaintiffs who refuse to pay is limited to quantum meruit, it does

not follow that those Plaintiffs who have paid the price LabCorp

charged have a quantum meruit remedy against LabCorp.  "[U]njust

enrichment [i]s an appropriate remedy only in situations where the

complaining party . . . undertook an action with an expectation of

compensation or other benefit in return."  Butler v. Butler, 768

S.E.2d 332, 339 (N.C. Ct. App. 2015); see also Stout v. Smith, 165

S.E.2d 789, 791 (N.C. Ct. App. 1969) ("A promise to pay for

services is implied when they are rendered and received in such

circumstances as authorize the party performing to entertain a

reasonable expectation of payment for them by the party

benefited.").  Plaintiffs cannot have reasonably expected LabCorp

to provide them with some additional benefit in compensation for

their payment of charges for services LabCorp had already rendered.

    Plaintiffs do not attempt to address these issues.  Rather,

they cite two cases in support of their one-sentence recoupment argument. In <u>Amwest Surety Insurance Co. v. Republic National Bank</u>, 977 F.2d 122 (4th Cir. 1992), the Fourth Circuit held that — under South Carolina law — a plaintiff could recover funds a bank appropriated from the plaintiff and used to pay down a third-party debt (all in breach of the parties' line of credit and loan documentation) without the plaintiff's consent. In <u>Root v. Allstate Insurance Co.</u>, 158 S.E.2d 829 (N.C. 1968), the North Carolina Supreme Court reversed the trial court's dismissal of a claim that the defendant/lessee was unjustly enriched by having used part of the plaintiff/lessor's building without paying for it. Neither case has any bearing on whether North Carolina law allows a plaintiff to recover monies knowingly paid for services requested and rendered.[15]

In sum, the court can discern no reason why its prior dismissal of Plaintiffs' recoupment claim should come out differently this time around. Thus, LabCorp's motion to dismiss will be granted as to Count II.

### 3. Statutory Claims

In Counts III through XI, Plaintiffs claim that LabCorp's billing and collection practices violate consumer protection

---

[15] This result is consistent with that in <u>Leslie v. Quest Diagnostics, Inc.</u>, No. 17-1590(ES)(MAH), 2018 WL 1535235 (D.N.J. Mar. 29, 2018), which dismissed similar claims of unjust enrichment against another laboratory services provider. <u>See</u> <u>id.</u> at *7.

statutes in North Carolina, Alabama, California, Florida, Maryland, New Jersey, Tennessee, and Texas — all essentially variations on what in North Carolina is the Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1 *et seq.* ("UDTPA"). The parties largely treat these claims collectively, and (lacking any present argument to the contrary) the court will therefore assume for purposes of this motion that authority supporting a claim in any of these jurisdictions supports that claim across the board, and vice versa.

Plaintiffs propose three different bases for liability under the state statutes:

> <u>First</u>, LabCorp systematically overcharges individuals with no contract by egregious amounts. <u>Second</u>, LabCorp manipulates self-pay patients into paying its knowingly excessive chargemaster rates by sending non-transparent invoices that omit the CPT code[16] or LabCorp test code and the medical diagnosis code . . . . <u>Third</u>, LabCorp uses intimidating letters to extract payment . . . .

(Doc. 47 at 25.) LabCorp argues that the court has already rejected Plaintiffs' overcharging and non-transparent invoice claims, and further that the mere fact that its collection letters <u>would</u> have violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, <u>had</u> they been sent by a third-party collection agency, does not make sending the letters an unfair or deceptive act.

---

[16] "'CPT code' means Current Procedural Terminology code, and is a set of medical codes for healthcare-related laboratory procedures, and is maintained by the American Medical Association." (Doc. 42 ¶ 6 n.1.)

Each of the state statutes at issue in this case requires, in one form or another, that the plaintiff "allege facts plausibly showing that . . . a defendant committed an unfair or deceptive act." _Sullivan_, 2018 WL 1586471, at *4 (referencing the North Carolina UDTPA); _see also_ Ala Code. § 8-19-1, _et seq._ (prohibiting "deceptive acts or practices in the conduct of any trade or commerce"); Cal. Civ. Code § 1770 _et seq._ (prohibiting "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in . . . services to any consumer"); Cal. Bus. & Prof. Code § 17200, _et seq._ (prohibiting "unfair or fraudulent business act[s] or practice[s]"); Fla. Stat. Ann. § 501.201, _et seq._ (prohibiting "unconscionable acts or practices[] and unfair or deceptive acts or practices in the conduct of any trade or commerce"); Md. Code Ann., Com. Law § 13-101, _et seq._ (prohibiting "any unfair or deceptive trade practice"); N.J. Stat. Ann. § 56:8-1 _et seq._ (prohibiting "any unconscionable commercial practice, deception, fraud, false pretense . . . misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission"); Tenn. Code § 47-18-101, _et seq._ (prohibiting "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce"); Tex. Bus. & Com. Code § 17.41, _et seq._ (prohibiting "[f]alse, misleading, or deceptive acts or practices in the conduct

of any trade or commerce" and "any unconscionable action or course of action by any person" that causes "economic damages or damages for mental anguish").[17]  North Carolina courts have stated that business practices are unfair if they are "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and are deceptive if they have "the capacity or tendency to deceive."  Ace Chem. Corp. v. DSI Transp., Inc., 446 S.E.2d 100, 106 (N.C. Ct. App. 1994).

As to Plaintiffs' argument that LabCorp should be liable for its failure to provide CPT codes in its invoices, the court agrees with LabCorp that its prior opinion already rejected the theory that LabCorp's aggregate billing method is unfair or deceptive. See Sullivan, 2018 WL 1586471, at *5, 9, 11.  Although Plaintiffs have modified their claim slightly by focusing more on test-by-test CPT codes rather than test-by-test insurance adjustments, neither omission "render[s] the invoices misleading."  Id. at *9. Moreover, Plaintiffs do not indicate where in their amended complaint they plausibly plead that they would not have paid the charges had LabCorp provided CPT codes — let alone that a significant number of consumers in their position would not have paid.  See, e.g., Bank of Am., N.A. v. Jill P. Mitchell Living Trust, 822 F. Supp. 2d 505, 534 (D. Md. 2011) (noting that

---

[17] For purposes of this motion, the court assumes — as do the parties — that Plaintiffs can bring claims under the laws of each of these states.

plaintiffs proceeding on a material omission theory of unfair or deceptive trade practices must show both reliance and that "a significant number of unsophisticated consumers likely would not have made the disputed choice had the commercial entity not omitted the information in question"); cf. Tex. Bus. & Com. Code § 17.46 (establishing material omission liability where the "failure to disclose [the] information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed"). Instead, most of the Plaintiffs who paid LabCorp's charges specifically allege that they did so only because of LabCorp's allegedly coercive tactics; i.e., "to avoid continuing collection efforts" and/or "harm to [their] credit rating." (Doc. 42 ¶¶ 164, 249, 375.)

As to Plaintiffs' excessive pricing claim, however, the court disagrees with LabCorp that its prior opinion requires dismissal. As to the original complaint, Plaintiffs had argued that the act of "billing them [LabCorp's list prices] violates the UDTPA" — in other words, that the prices LabCorp charged were unfair or deceptive simply because they were so "excessive." (Doc. 20 at 24.) The court rejected that argument because, as the North Carolina Supreme Court explained in Bumpers v. Community Bank of Northern Virginia, 747 S.E.2d 220 (N.C. 2013), it is not normally unfair or deceptive to charge a price — even an exorbitant one. Id. at 228–29. However, as the court pointed out, Bumpers

qualified its holding by noting that "there may be circumstances . . . when an unreasonably excessive price would constitute a violation of [the UDTPA]." Id. at 229; see Sullivan, 2018 WL 1586471, at *4 (describing Bumpers as holding that "where there was no element of exigency, misrepresentation, or compulsion, high price alone did not violate the UDTPA"); cf. Leslie, 2018 WL 1535235, at *4 (rejecting a claim that excessive pricing alone is unfair or deceptive, but noting that it might be unfair or deceptive when paired with "other factors"). As relevant here, the plaintiffs in Bumpers "entered into [the challenged] transactions freely and without any compulsion," such that their claims were governed by the rule that "when transacting parties willingly and honestly negotiate a transaction, generally the transaction is not said to be unfair or deceptive." 747 S.E.2d at 228–29.

In the amended complaint, Plaintiffs' overcharging claim is not merely an accusation that LabCorp's prices are excessive, but that "LabCorp has a number of business practices that trick and harass customers into paying excessive prices." (Doc. 42 ¶ 417); see also (Doc. 47 at 26 ("Plaintiffs' allegations in the aggregate are not simply 'excessive pricing' . . . claims, but encompass targeting individual patients and systematically overcharging them using aggressive and manipulative billing and collection techniques for services that are critical to a patient's

health.")).  In the amended complaint, Plaintiffs allege that LabCorp declines to disclose its prices to patients until they have already received services, whereupon LabCorp charges them amounts grossly exceeding the reasonable value of the services rendered and coerces them into paying the inflated prices by threatening to damage their credit ratings and to foreclose them from using LabCorp's services in the future.  (Doc. 42 ¶¶ 3-11, 338, 427.)  These additional elements distinguish LabCorp's alleged business practices from the transactions at issue in Bumpers, as well as from Plaintiffs' arguments in the prior round of briefing, where the argument was simply that the prices at issue were too high.

LabCorp argues that the question whether its collection letters would have violated the FDCPA had they been sent by a third-party collection agency "simply ha[s] no bearing on Plaintiffs' claims," given that the letters were not so sent. (Doc. 46 at 21.)  LabCorp cites no authority for this proposition, and courts in this district treating North Carolina's analogue to the FDCPA — the North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. § 75-51 — have previously found that even where a defendant "cannot be directly liable under the NCDCA, provisions of that statute provide examples of behavior that will be considered unfair and deceptive within the broader scope of the UDTPA's restrictions."  DIRECTV, Inc. v. Cephas, 294 F. Supp. 2d

760, 765 (M.D.N.C. 2003). At any rate, the court need not reach arguments pertaining to whether the threatening letters in isolation would support a claim for unfair or deceptive trade practices, as it construes Plaintiffs' excessive-pricing and threatening-letter theories together as a general challenge to LabCorp's billing practices.[18] Lacking any persuasive argument to the contrary, the court cannot say that Plaintiffs have failed to plead a claim under the state consumer protection statutes at issue.

To be clear, Plaintiffs will ultimately have the considerable burden of showing that LabCorp's list prices were so excessive and its billing practices so coercive, that — together with LabCorp's nondisclosure of price — LabCorp's billing practices were sufficiently "egregious or aggravating" as to be an unfair or deceptive trade practice. Becker v. Graber Builders, Inc., 561 S.E.2d 905, 910 (N.C. Ct. App. 2002). Moreover, Plaintiffs will have to meet the other elements of an unfair or deceptive trade practices claim, unchallenged in the current motion: that the

---

[18] LabCorp points out that Plaintiffs alleged threatening letters in the original complaint, which the court dismissed for failure to state a claim. However, the original complaint only mentioned collection letters once in its 179 paragraphs, and Plaintiffs did not mention them at all in briefing — let alone make an argument that the collection letters were relevant to their UDTPA claim. The amended complaint heavily emphasizes the collection letters, and Plaintiffs in briefing link the letters directly to their excessive pricing claim. See (Doc. 47 at 26).

allegedly unfair or deceptive act was (1) in or affecting commerce and (2) proximately caused injury to Plaintiffs. Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2011). At present, suffice it to say that LabCorp's contention that "Plaintiffs' [UDTPA] claim still reduces to the simple fact that they think LabCorp's prices are too high" (Doc. 46 at 21) is mistaken.[19]

As a result, LabCorp's motion to dismiss will be granted as to any unfair or deceptive trade practices claim in the amended complaint based on nondisclosure of CPT codes, but will be denied as to any claim based on allegations that LabCorp was limited to payment for the reasonable value of its services under a quasi-contract theory and nevertheless attempted to collect undisclosed and grossly excessive prices through coercive billing practices.

## B.   Motion to Strike Class Allegations

Plaintiffs purport to bring claims under Federal Rules of Civil Procedure 23(b)(2) & 23(b)(3)

> on behalf of themselves and on behalf of a national
> Class, defined . . . as all LabCorp patients in the
> United States who, without any express contract with
> LabCorp that establishes the amount of fees to be paid
> to LabCorp, were charged fees for clinical lab testing
> services performed by LabCorp that were in excess of the
> reasonable market rates for the same services.

---

[19] However, Plaintiffs' proposed sub-classes appear to include all customers who were "charged" LabCorp's list prices, rather than all customers who were charged and also received collection letters. It may be that the claims of proposed class members who did not receive collection letters would in fact "reduce[] to the simple fact that they think LabCorp's prices are too high." (Doc. 46 at 21.)

(Doc. 42 ¶ 449.)  Plaintiffs also allege nine sub-classes, eight of which mirror the national class definition but are confined to a specific state: Alabama, California, Florida, Maryland, New Jersey, North Carolina, Tennessee, and Texas.  (Id. ¶ 450.)  The final sub-class is a national class for LabCorp patients who were not only charged LabCorp's list prices, but who also paid them. (Id.)

LabCorp moves to strike Plaintiffs' class allegations under Rules 12(f) and 23(d)(1)(D) on the basis that the merits claims require too many individualized inquiries.  LabCorp first argues that

> determining the so-called reasonable value of services rendered would require examining at least: (1) the price LabCorp charged for each and every test provided to each and every class member for an indeterminate period of time; (2) the cost basis for each of those thousands of tests; (3) all the prices charged to all other buyers — including third-party payers, the government, and uninsured patients — for each one of those tests based on the place and time those tests were performed; (4) the prices for each and every available competitor who offers the same testing services; (5) the amount charged to each class member; (6) the value of the services rendered to each class member; and (7) the amount paid by each class member, if any, including discounts or other relief obtained.

(Doc. 46 at 24.)  Next, LabCorp argues that Plaintiffs' implied-contract claims necessarily involve fact-specific inquiries into whether a given Plaintiff assented to a specific price or any of the other elements of a contract.  LabCorp points out that Plaintiffs' interactions with it vary factually: some Plaintiffs

went to a LabCorp clinic directly; others knew their doctor would send their specimens to a lab but didn't know it would be LabCorp; and at least one appears to have assumed his healthcare provider would perform the test in-house.

Plaintiffs respond that the number of lab tests at issue is finite and could be narrowed further if necessary; that it is speculative to assume at this early stage that they will be unable to establish a uniform valuation theory after discovery; and that LabCorp's practice of not affirmatively disclosing its list prices in advance renders mutual assent to price impossible.

In order to certify a class in this case, Plaintiffs will need to show that

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). They will also need to show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole" or that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

controversy." Id. 23(b)(2) & (3).

However, Plaintiffs have not yet moved to certify a class and therefore need not yet meet these standards. Instead, it is LabCorp that must meet the demanding standard of showing that Plaintiffs' class allegations should be struck. Because "an evidentiary hearing is typically held" prior to certification, Monroe v. City of Charlottesville, 579 F.3d 380, 384 (4th Cir. 2009), it is normally only appropriate to strike class allegations when a defendant "demonstrate[s] from the face of plaintiffs' complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." Whitt v. Seterus, Inc., No. 3:16-2422-MBS, 2017 WL 1020883, at *2 (D.S.C. Mar. 16, 2017) (emphasis added); see also 5C Charles Alan Wright et al., Federal Practice & Procedure § 1380 (3d ed. 2011) (noting that "striking a portion of a pleading is a drastic remedy" and that Rule 12(f) motions are therefore "viewed with disfavor by the federal courts and are infrequently granted" (footnotes omitted)). Some courts in this circuit have therefore denied motions to strike out of hand as premature. See Alig v. Quicken Loans Inc., 2015 WL 13636655, at *3 (N.D.W. Va. Oct. 15, 2015) ("[C]lass allegations should not be addressed at the pleading stage, before plaintiff has had full opportunity for discovery and to revise the class definition as necessary."); see also Mungo v. CUNA Mut. Ins. Soc., No. 0:11-464-MBS, 2012 WL

3704924, at *6 (D.S.C. Aug. 24, 2012) (declining to "consider Defendants' arguments relating to the typicality or adequacy of Plaintiff's representation of the proposed class" on a motion to strike "as these arguments are premature").

With these standards in mind, the court finds that — although LabCorp identifies serious hurdles Plaintiffs will have to overcome to achieve class certification — Plaintiffs' chances of attaining certification are not so wholly nonexistent as to justify the drastic remedy of striking their class allegations.  To be sure, each of the specific valuation theories Plaintiffs mentions is flawed; using "the amounts paid by third-party payers" as the reasonable value (Doc. 42 ¶ 84) is very similar if not identical to the theory the court previously rejected, and the court is skeptical that using the Medicare or Medicaid rates (id. ¶¶ 89–106) would be any improvement.  Unlike in the original complaint, however, Plaintiffs do not commit themselves to any one of these theories to the exclusion of others, representing instead that they "anticipate relying upon an expert to analyze" cost and price data obtained through discovery "to develop a formula to calculate the market rate for any given clinical lab test."  (id. ¶ 110.) Vague though this proposal may be, LabCorp does not explain why Plaintiffs should be required to enunciate a specific valuation theory in their initial pleadings — especially when Plaintiffs lack the data on which they intend to rely and have not had any

opportunity for discovery.[20] Moreover, Plaintiffs suggested at the hearing on the present motion that they may seek certification limited to what they contend would be a more manageable number of tests. See also (Doc. 47 at 30 (Plaintiffs noting the possibility that "trial [could] proceed[] only with a selection of lab tests," for instance "those that [the named] Plaintiffs were billed for or the twenty most common").) While such noncommittal positions on reasonable value and certification do not justify striking the class allegations at this early stage, they will not translate into fishing-expedition-style class discovery. Instead, Plaintiffs should be permitted the opportunity to demonstrate how some targeted discovery can be had that is reasonable and proportional to the necessary issues.

As to the mutual assent issue, LabCorp's skepticism is legitimate, but the arguments are better fit for consideration on a motion for class certification. Although LabCorp cites cases disapproving of class actions in the context of contract claims, each of those cases involves a motion for class certification, not a pre-answer motion to strike class allegations. See Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331 (4th Cir. 1998); Kreger v. Gen. Steel Corp., No. 07-575, 2010 WL 2902773 (E.D. La.

---

[20] This does not account for the method of proof LabCorp may contend is necessary to prove reasonable value of its services, if the case proceeds to that stage.

July 19, 2010); <u>Harrison v. Wal-Mart Stores, Inc.</u>, 613 S.E.2d 322 (N.C. Ct. App. 2005). Moreover, LabCorp barely acknowledges Plaintiffs' argument, reiterated at the motions hearing, that lack of knowledge of price forecloses any possibility of mutual assent as to price, and thus forecloses an implied-in-fact contract. <u>See also</u> <u>Forsyth Cty. Hosp. Auth., Inc. v. Sales</u>, 346 S.E.2d 212, 214 (N.C. Ct. App. 1986) ("Failure to agree on the amount of compensation entitles the physician to the reasonable value of his services . . . ."). As these cases demonstrate, the prudent course is to allow the parties to more fully marshal their certification arguments with the benefit of at least preliminary discovery.[21]

As a result, LabCorp's motion to strike class allegations will be denied without prejudice to those challenges being raised in opposition to Plaintiffs' motion for class certification.

---

[21] Moreover, this will also allow the parties to develop a factual record to address the lingering question raised by the court at the motions hearing: whether an agency relationship existed between any parties and/or non-parties that would materially affect the legal claims in this case. At the hearing, Plaintiffs' counsel noted that "we're presuming for the purposes of this case that the doctor was authorized to order the tests they ordered." Counsel for LabCorp commented that "[i]n effect, the doctors are acting as [the patients'] agents in this situation." Another counsel for LabCorp represented that there were situations in which "the physician [is] acting on our behalf." If there is any relevant agency relationship between medical professionals and any of the parties, the amended complaint is silent as to its scope. <u>See generally</u> <u>Manecke v. Kurtz</u>, 731 S.E.2d 217 (N.C. Ct. App. 2012) (discussing liability of principals for contracts entered into by their agents).

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that LabCorp's motion to dismiss is GRANTED as to Count II and as to any claim in Counts III—XI based on nondisclosure of CPT codes; as to all other claims, the motion is DENIED.

IT IS FURTHER ORDERED that LabCorp's motion to strike class allegations is DENIED WITHOUT PREJUDICE.


                                    /s/    Thomas D. Schroeder
                                  United States District Judge


August 16, 2019