# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# GREENSBORO DIVISION

| | |
|---|---|
| SHERYL ANDERSON, MARY CARTER, TENA DAVIDSON, ROBERT HUFFSTUTLER, RAMZI KHAZEN, CHAIM MARCUS, LILY MARTYN, JONAH MCCAY, HOLDEN SHERIFF, VICTORIA SMITH, MICHELLE SULLIVAN, SHONTELLE THOMAS, JOSEPH WATSON, and MICHAEL WILSON, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>LABORATORY CORPORATION OF AMERICA HOLDINGS,<br><br>        Defendant. | Case No. 1:17-cv-193-TDS-JLW |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO COMPEL DOCUMENTS

### NATURE OF THE MATTER BEFORE THE COURT

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37.1, Plaintiffs bring this motion to compel production of documents from Defendant Laboratory Corporation Holdings of America, Inc. ("LabCorp").[1] Plaintiffs seek production of (1) LabCorp's agreements, including negotiated rates, with Plaintiffs' insurance companies, and (2) the data LabCorp submitted to the Centers for Medicare and Medicaid Services

---

[1] Given the deadline for Plaintiffs to file their motion for class certification, Plaintiffs' counsel asked LabCorp to consent to expedited resolution of these discovery issues under LR 37.1(b). LabCorp would not agree.

1

("CMS") pursuant to the Protecting Access to Medicare Act of 2014 ("PAMA"). These documents go to the heart of Plaintiffs' claims that the "list price" for laboratory testing services LabCorp charged to Plaintiffs "without any prior agreement" is "grossly too high." ECF Doc. 55, p. 3 (Memorandum Opinion and Order on Defendant's motion to dismiss the amended complaint).

## STATEMENT OF FACTS

### I.     ALLEGATIONS IN THE AMENDED COMPLAINT

LabCorp provides laboratory testing services. ECF Doc. 42, ¶ 1. As summarized by this Court in its opinion on LabCorp's motion to dismiss the amended complaint, LabCorp charges uninsured patients and patients whose insurance company deny their claims a patient list price that is "much higher" than the rates LabCorp negotiates with third party insurers or the rates paid by Medicare. ECF Doc. 55, p. 2. Also, and again as stated by this Court, Plaintiffs' "common complaint is that they were … charged the list price, which they allege is grossly too high, without any prior agreement as to price." ECF Doc. 55, p. 3. *See* ECF Doc. 42, ¶¶ 10-11, 80-82, 121, *et seq.* Whereas patients, on those occasions when they pay for tests directly, are generally billed a patient list price, private insurance companies or a government payor such as Medicare, who pay for almost all of LabCorp's tests (*See* ECF Doc. 42 ¶ 67), get the benefit of the less expensive negotiated rates. *Id. at* ¶ 58.

In Count I of the Amended Complaint, Plaintiffs seek a declaratory judgment that LabCorp is entitled only to a reasonable price for its services under the law of implied-in-fact contract and implied-in-law contract. ECF Doc. 42, ¶¶ 3, 10, 17, 118, 466-468. In

2

Counts III-XI of the Amended Complaint, Plaintiffs allege that LabCorp violated various state consumer protection statutes and seek damages and equitable relief. Excessive pricing is part of those claims. ECF Doc. 42, ¶¶ 486, 499, 507, 514, 521, 528, 535, 543, 552; ECF 55, p. 22, 24. The Court dismissed Count II of the Amended Complaint, which had sought restitution under either an implied-in fact contract or implied-in-law contract theory. ECF 55, pp. 14-17.

Plaintiffs seek to have their claims certified as a class action, with their motion to certify the class currently due June 16, 2021.

## II. THE DISCOVERY DISPUTE

LabCorp refuses to produce documents in response to two requests relating to the amounts insurance companies pay LabCorp for testing services. Declaration of Jonathan Sasser ("Decl.") ¶ 4. This information is relevant both to showing that the patient list prices charged to Plaintiffs and class members are unreasonable and to establishing reasonable prices for the tests.

In Request No. 3 of Plaintiffs' first document request, Plaintiffs seek documents relating to the amounts insurance companies have agreed to pay LabCorp for lab tests (also known as "in-network" rates). The request seeks:

> Agreements and negotiated rate schedules with Third-Party Payers that provide rates to be paid for lab services performed by LabCorp. Your response to this request should include Documents and Communications sufficient to identify any formula or other method used to calculate payment rates for LabCorp's lab services that LabCorp has agreed to with any Third-Party Payer.

LabCorp objected in relevant part as follows:

3

> LabCorp objects to the term "Third-Party Payers" as defined in the Discovery Requests. *See* Section II above. LabCorp further objects to the assumptions inherent in this request, including the assumption that LabCorp applies a formula to set the rates it charges to Third-Party Payers….Moreover, the request is overly broad, unduly burdensome, and is not proportional to the needs of the case. During **each** year of the "Relevant Time Period," LabCorp has maintained, on average, more than four thousand accounts with managed care organizations, ten thousand hospital accounts, and four hundred thousand accounts with physicians and/or physician groups. In this context, LabCorp performs over a half-billion tests annually and offers hundreds of thousands of tests and test combinations. It is not practicable – nor is it possible – for LabCorp to produce each and every of the request "Document[s]" and "Communication[s]" (as defined in the Discovery Requests – *see* Section IV above) about its "lab services." LabCorp will not produce documents in response to this request.

(Emphasis in original).

To lessen the burden on LabCorp, Plaintiffs initially offered to narrow Request No. 3 to LabCorp's agreements and negotiated rate schedules with the top-100 Third-Party Payers, ranked by revenue. Decl. ¶ 12. LabCorp refused Plaintiffs' offer. *Id.* Subsequently, Plaintiffs offered to further narrow Request No. 3 to only the agreements that were in place between LabCorp and the Plaintiffs' insurers at the time their tests were performed (including any earlier agreements and negotiated rate schedules incorporated by reference into the later agreements). Decl. ¶ 13. LabCorp rejected this significantly scaled back request. Decl. ¶ 14. LabCorp has not made any proposals to resolve the parties' dispute concerning Request No. 3. *Id.*

In Request No. 22 of Plaintiffs' first document request, Plaintiffs seek insurance reimbursement rates for LabCorp's tests as contained in a filing LabCorp is required to make with the Centers for Medicare and Medicaid Services ("CMS"). In 2014 Congress enacted the Protecting Access to Medicare Act ("PAMA") Pub. L. No. 113-93, 128 Stat.

4

10410 (2014). PAMA requires clinical laboratories like LabCorp to report to CMS the price insurance companies paid for lab tests, and the volume of tests at each of those prices. *Am. Clinical Lab. Ass'n v. Azar*, 931 F.3d 1195, 1199 (D.C. Cir. 2019); *see generally*, *Am. Clinical Lab. Ass'n v. Beccerra*, No. 17-2645, 2021WL 1197729, at *2 (D. D.C. March 30, 2021) ("Congress passed PAMA in an effort to make Medicare's reimbursement rates comparable to those paid by private insurers for the same laboratory tests."). In enacting PAMA, Congress determined that Medicare rates for lab tests are 18-30% higher than the rates private insurers are paying. *Baccerra*, 2021 WL1197729, at *2. To date, LabCorp has been required to make only one submission of PAMA-required data to CMS, *Id.* at *5 (data collected in 2017); CMS, "PAMA Regulations, Important Update," (*See* https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/ClinicalLabFeeSched/PAMA-regulations (last accessed April 27, 2021) (next data reporting is in 2022)). It is this limited information Plaintiffs request.

The request seeks:

> Documents collected for and submitted to CMS to comply with federal regulations concerning the Clinical Laboratory Fee Schedule.

LabCorp objected in relevant part:

> Labcorp objects to this request on the grounds that it is overbroad, unduly burdensome, and is nothing more than an impermissible "fishing-expedition-style" discovery request. LabCorp further objects on the grounds that this request is vague and ambiguous. The term "Clinical Laboratory Fee Schedule" is undefined. LabCorp has submitted numerous categories of document for various parties to different divisions of "CMS" that pertain to diagnostic tests, including the hundreds of thousands of tests and test combinations offered by LabCorp. This request does not provide any reasonable limitation on scope, time, or subject matter.

Again, Plaintiffs offered to significantly narrow Request No. 22 to lessen the burden on LabCorp. Plaintiffs stated that they would accept the information LabCorp submitted to CMS under PAMA. Decl. ¶ 17. LabCorp still refuses to produce responsive documents. Decl. ¶ 19.

The LR 37.1(a) Certificate of Conference sets forth the parties' efforts to resolve the disputes discussed in this motion.

## QUESTION PRESENTED

Whether LabCorp should be compelled to produce a limited number of documents relating to the amounts insurers pay for lab tests, and agreements relating to those negotiated amounts.

## ARGUMENT

### I. LABCORP BEARS THE BURDEN TO PROVE GROUNDS TO RESIST DISCOVERY.

Federal Rule of Civil Procedure 26(b) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" *Armitage v. Biogen, Inc.*, No. 1:17-cv1133, 2019 WL 79037, at *2 (M.D.N.C. Jan. 2, 2019). Courts within the Fourth Circuit have "repeatedly ruled that the party or person resisting, not the party moving to compel discovery, bears the burden of persuasion." *Hughes v. Research Triangle Inst.*, No. 1:11-cv546, 2014 WL 4384078, at *2 (M.D.N.C. Sept. 3, 2014) (*citing Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 243–44 (M.D.N.C. 2010)). A party resisting

production must state the reasons for the objection with particularity. *Hughes*, 2014 WL 4384078, at *3 (citing *Mancia v. Mayflower Textiles*, 253 F.R.D. 354, 359 (D. Md. 2008)).

LabCorp has not objected to the relevance of the documents requested in Request Nos. 3 and 22.

## II. THE REQUESTS ARE NOT OVERLY BROAD OR UNDULY BURDENSOME.

Because Plaintiffs have significantly narrowed the two document requests, LabCorp cannot argue that those requests are overly broad or unduly burdensome.

With respect to the insurance agreements and insurance rate schedules, there are a maximum of thirteen of them since there are thirteen plaintiffs. Since certain of the Plaintiffs were insureds of the same company, LabCorp will have to produce fewer than twelve agreements. (And since the request imposes so little burden, there are no proportionality concerns.)

With respect to the PAMA data, LabCorp has already collected and submitted this data to CMS, so it is simply a matter of producing the same files that LabCorp submitted to CMS. And, LabCorp has submitted the PAMA data to CMS only once. Courts have compelled production of government filings in much more burdensome circumstances. *E.g.*, *In re Genentech Herceptin (Trastuzumab) Marketing and Sales Practices Lit.*, MDL Docket No. 16-MD-2700, 2017 WL 9939631 (N.D. Okla. May 8, 2017) (order compelling production of documents from defendant's regulatory database and custodial files); *In re Plastics Additives Antitrust Lit.,* No. Civ.A03-2038, 2004 WL 2743591 (E.D.

Pa. Nov. 29, 2004) (order compelling production of submissions to U.S. and foreign governments).

## III. THE REQUESTS SEEK RELEVANT INFORMATION.

LabCorp does not raise a relevance objection to the requests, though it has not withdrawn its "fishing expedition" objection to the request for PAMA data. In any event, both requests seek information about amounts paid by insurance companies that is relevant and should be produced. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) ("Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted"); *EEOC v. Sheffield Fin. LLC*, No. 1:06-cv-889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007) (for purposes of construing Rule 26, relevance is "broadly construed to encompass 'any possibility' that the information sought may be relevant to the claim or defense of any party" (citation omitted)).

This Court has recognized that while the rate LabCorp charges third-party payers may not be, *as a matter of law*, the reasonable value of LabCorp's services in every case (ECF Doc. 55, p. 11), it still may be relevant (along with, for instance, government payer data) to calculate the reasonable value for any given clinical test (ECF Doc. 55, pp. 11-12).

Other courts have expressly ruled that insurance rates for medical services are relevant to determining whether a health provider's prices are reasonable or not. In *In re N. Cypress Med. Ctr., Ltd.*, 559 S.W. 3d 128 (Tex. 2018), a hospital placed a lien on a patient's property because she did not pay her bill. The patient sought a declaratory

8

judgment that the hospital's charges were unreasonable "to the extent is exceeds a reasonable and regular rate for services rendered." *Id.* at 130. The plaintiffs served requests for production of documents and interrogatories seeking all contracts between the hospital and insurance companies for negotiated rates (*i.e.*, the in-network rates) for the same services, and the amounts the hospital received from Medicare and Medicaid for the same services. *Id.* The hospital objected on relevance grounds. *Id.* at 131.

Stating that the hospital's objection "defies, logic," the Supreme Court of Texas compelled discovery:

> The crux of [Plaintiff's] lien claim is whether the amount secured by North Cypress's hospital lien exceeds a reasonable and regular rate for the services provided. The amounts North Cypress accepts as payment for those services from other patients, including those covered by private insurance and government benefits, are relevant to whether the charges to [Plaintiff] were reasonable and are thus discoverable.

*Id.* at 137; *see also id.* at 134-135 (discussing relevance of insurance companies' reimbursement rates). *See also Beccerra*, 2021 WL 1197729, at *2 (PAMA data is being collected in an effort to "ensure that Medicare rates reflect true market rates for laboratory services"); *Melo v. Allstate Ins. Co.*, 800 F. Supp. 2d 596, 602 (D. Vt. 2011) (range of payments medical providers accept for services is relevant evidence to the reasonable value of the services); *Temple U. Hosp. v. Healthcare Mgmt. Alts., Inc.*, 832 A.2d 501, 508 (Pa. 2003) (a hospital is entitled to a reasonable fee for those services, *i.e.*, what people pay for those services, not what the hospital receives in 1-3% of its cases); *E. Tex. Med. Ctr, Athens v. Hernandez*, No. 12-17-00333-CV, 2018 WL 2440508 (Tex. App.-Tyler May 31, 2018) (amounts a hospital accepts as payment from other patients,

9

including those covered by private insurance, are relevant to whether the charges are reasonable).

In addition, with respect to the request for LabCorp's contracts with insurance companies, these documents can contain the following relevant information:

- when LabCorp may bill a patient a patient list price;

- when an insurance company may require that LabCorp give the patient advanced notification that the test is not covered by insurance;

- whether Medicare rates or some other standard is used as the basis for negotiations and the relationship between the Medicare rates and negotiated rates. For example, if the negotiated rates are discounts to Medicare rates, that would suggest that LabCorp considers the Medicare rates to be beneficial rates of payment for its services, and that Medicare rates (or some multiple of Medicare rates) would be appropriate for the Court to use as a barometer in determining appropriate rates in this case.

## CONCLUSION

Plaintiffs respectfully request that the motion be granted.

DATED: April 28, 2021

/s/  *Jonathan Sasser*
Jonathan D. Sasser
N.C. State Bar No. 10028
ELLIS & WINTERS LLP
P.O. Box 33550
Raleigh, North Carolina 27636
Telephone Number: (919) 865-7000
Facsimile Number: (919) 865-7010
jon.sasser@elliswinters.com

Robert C. Finkel
WOLF POPPER LLP
845 Third Avenue 12th Floor
New York, NY 10022
Email: rfinkel@wolfpopper.com

10

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3(d)

The undersigned hereby certifies that this brief complies with the word limit requirements of Rule 7.3(d)(1) of the Rules of Practice and Procedure of the United States District Court for the Middle District of North Carolina. In making this certification, the undersigned has relied upon the word-count feature of word-processing software.

/s/ *Jonathan Sasser*
Jonathan D. Sasser
N.C. State Bar No. 10028
ELLIS & WINTERS LLP
P.O. Box 33550
Raleigh, North Carolina 27636
Telephone Number: (919) 865-7000
Facsimile Number: (919) 865-7010
jon.sasser@elliswinters.com