# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## GREENSBORO DIVISION
### Case No. 1:17-cv-193-TDS-JLW

SHERYL ANDERSON, MARY
CARTER, TENA DAVIDSON,
ROBERT HUFFSTUTLER, RAMZI
KHAZEN, CHAIM MARCUS, LILY
MARTYN, JONAH MCCAY, HOLDEN
SHERIFF, VICTORIA SMITH,
MICHELLE SULLIVAN,
SHONTELLE THOMAS, JOSEPH
WATSON, and MICHAEL WILSON,
individually and on behalf of all others
similarly situated,

               Plaintiffs,

    v.

LABORATORY CORPORATION OF
AMERICA HOLDINGS,

               Defendant.

---

## DEFENDANT LABORATORY CORPORATION OF AMERICA HOLDINGS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

Defendant Laboratory Corporation of America Holdings ("Labcorp")

hereby responds to Plaintiffs' Motion to Compel Discovery (Doc. 74) and

requests that Plaintiffs' motion be denied in its entirety.

## FACTUAL BACKGROUND

**A.    Labcorp performs many millions of diagnostic laboratory tests annually and receives payment in a variety of ways.**

Labcorp offers hundreds of thousands of different clinical diagnostic tests and test combinations and performs over 500 million tests each year. *See* Labcorp's Answers to Plaintiffs' First Set of Interrogatories dated February 28, 2020, at p. 8 (Ans. to No. 2) (Exhibit 1).  Medical doctors and hospitals order these tests on behalf of their patients in connection with diagnosing and treating patients in a myriad of different types of patient encounters. *Id.* at pp. 24–25 (Ans. to No. 12).

 Labcorp developed its patient list prices for individual tests over many years and through consideration of a variety of factors. *Id.* at pp. 15–16 (Ans. to No. 6).  The patient list prices vary by geography and by year, and are updated as Labcorp introduces new tests or retires other tests. *Id* at pp. 8–9 (Ans. to No. 2).  Labcorp has provided extensive discovery regarding these matters, including how Labcorp has developed the patient list prices for these many different tests. *See, e.g.,* Schedule A to Notice of Rule 30(b)(6) Dep. of Labcorp, dated Dec. 18, 2021, at ¶¶ 18–21 (Exhibit 2).

Labcorp bills its patient list prices to (a) government payors like Medicare; (b) large insurance companies like Humana, Aetna, Cigna, and the

various BlueCross BlueShield carriers; and (c) uninsured or underinsured[1] individual patients whose treating physicians order tests on their behalf.  Ex. 1 at p. 9 (Ans. to No. 2) ("[W]hile there are certain exceptions-including, without limitation, exceptions depending on the geographic region in which a test is offered-the 'usual and customary' rate for a test is generally the same as its patient list price for the test."); Rule 30(b)(6) Dep. of Labcorp (K. Woodcock designee) dated April 9, 2021 at 95:12–18 (Exhibit 3).  This final category of payor presents unique economic and practical considerations and constitutes an entirely different class of payor.

Medicare sets—that is, unilaterally dictates—the amounts it will reimburse clinical service providers (like Labcorp) for testing services regardless of the patient list prices the providers submit.  For various business reasons, Labcorp agrees to perform tests for Medicare patients despite its inability to obtain reimbursement at its patient list prices.  Chief among these reasons are that Medicare pays for millions of tests each year, effectively guarantees payment for such tests in a timely manner, and provides a

---

[1] "Underinsured" refers to coverage by an insurance policy that did not cover the test performed.

streamlined, cost-effective process through which Labcorp can submit claims, obtain reimbursements, and dispute denials.[2]

Large insurance companies similarly pay for many millions of tests each year, guarantee prompt payment, and provide streamlined claim submission, reimbursement, and dispute resolution processes. For these and other reasons, Labcorp often negotiates different volume-based reimbursement rates for those tests that the insurers choose to cover for their insureds. Because insurers and Labcorp negotiate across thousands of tests, the reimbursed contract rate for a given test may or may not be consistent (or even similar) from one insurance agreement to the next. *See* <u>Exhibit 3</u> at 29:1–12, 37:19–38:3. Labcorp may also agree with certain insurers to provide discounted rates to insureds even if the insurer does not cover the insured's test. Nevertheless, Labcorp bills these insurance companies at its patient list prices. If applicable, the insurance companies apply these negotiated discounts during the insurance remittance process. *Id*. at 43:18–44:19. These negotiated discounts are valuable benefits not only to the insurance companies that negotiate them, but also to the insureds themselves, who pay (or whose employers pay)

---

[2] Also, few hospitals or physician practices will utilize Labcorp's services if Labcorp does not perform tests for Medicare patients. This requirement is not unique to Labcorp; it is common to other participants in the national healthcare system.

4

significant premiums to the insurance company as consideration for those benefits.

An individual uninsured or underinsured patient, by contrast, has not paid consideration for the same benefits and, as such patients are unlikely to obtain more than a few tests in any given year, does not present the same volume-based value proposition or other business benefits presented by the government (Medicare) or large insurance companies. Unless the patient pays for testing at the time of service (which none of the named Plaintiffs did), Labcorp has no guarantee that the patient will *ever* pay for *any portion* of the service, much less that the patient will pay the entire balance in a timely manner. The process of invoicing, contacting, negotiating, and obtaining payments from such patients is so time and resource-intensive that Labcorp has, at great expense, established a separate patient billing department, which employs hundreds of people, to perform such tasks. *See, e.g.,* Rule 30(b)(6) Dep. of Labcorp (D. Myers designee) dated March 19, 2021 at 18:17–20, 19:11–17 (Exhibit 4). As this department performs these tasks on an individual, test-by-test basis, it cannot achieve any of the efficiencies of scale and commensurate cost savings that Labcorp realizes when billing the government or large insurance companies. *See id.*

5

**B.** **Although Plaintiffs are differently situated, Plaintiffs seek broad discovery regarding volume-based negotiated rates.**

In this case, fourteen plaintiffs seek a declaratory judgment, on behalf of themselves and a nationwide putative class, that they are not obligated to pay Labcorp's patient list prices and that they are entitled to substitute their own formulation of a "reasonable price" for each of Labcorp's over 500,000 tests and test combinations. Am. Compl. at ¶¶461–472. Plaintiffs were either uninsured or underinsured at the time their respective physicians ordered one or more tests on their behalf from Labcorp. Ex. 1 at p. 21 (Ans. to No. 10). Labcorp performed the diagnostic testing ordered by Plaintiffs' physicians and billed its standard patient list price for the tests. *Id.* at pp. 22-23 (Ans. to No. 11) ("[I]t is LabCorp's position that—even where there is not a writing—Plaintiffs' conduct is sufficient to create an enforceable agreement to pay LabCorp's patient list prices."). Plaintiffs—who are essentially single-instance, one-time purchasers of Labcorp's services—further contend that the price they should pay (or should have paid) instead ought to be based upon the same volume-based discounted reimbursement rates negotiated by large insurance carriers (or some undisclosed formula based on such rates) whose business is to negotiate such discounts for their insureds and to ensure efficient processing of their insureds' claims in exchange for payment of premiums.

6

Despite bearing no resemblance to Medicare or to large insurance companies, and representing a dramatically different portion of the laboratory services payor market, Plaintiffs now seek to obtain information about Labcorp's financial relationship with these entities. Here, Plaintiffs seek to compel production of documents pursuant to two Requests for Production:

> **Request for Production No. 3:** Agreements and negotiated rate schedules with Third-Party Payers that provide rates to be paid for lab services performed by LabCorp. Your response to this Request should include Documents and Communications sufficient to identify any formula or other method used to calculate payment rates for LabCorp's lab services that LabCorp has agreed to with any Third-Party Payer.

> **Request for Production No. 22:** Documents collected for and submitted to CMS to comply with federal regulations concerning the Clinical Laboratory Fee Schedule.

For the reasons explained below, these requests are overly broad, unduly burdensome, seek irrelevant information, and are disproportionate to the needs of the case. Labcorp therefore requests that Plaintiffs' motion be denied.

## PROCEDURAL BACKGROUND

Following this Court's ruling on LabCorp's motion to dismiss the Amended Complaint, discovery commenced on December 2, 2019. Plaintiffs have served two sets of requests for production of documents consisting of a combined total of 78 requests. Plaintiffs served the two requests at issue on

7

December 18, 2019, and Labcorp served its objections and responses on February 28, 2020.

Since the commencement of discovery, Labcorp has produced approximately 514,000 pages of documents in addition to providing answers to interrogatories and presenting numerous witnesses for depositions. Declaration of S. Bayzle, dated May 12, 2021, at ¶ 4 (Exhibit 5). Labcorp also participated in at least nine discovery conferences in an attempt to resolve disputes regarding numerous overbroad and burdensome discovery requests. *Id.* Labcorp and its counsel have continued to work in good faith to resolve discovery disputes despite Plaintiffs' repeated practice of attempting to substitute new, reformulated discovery requests months after Labcorp has explained the improper, objectionable nature of their initial discovery requests. *Id.* at ¶¶ 5–13.

Plaintiffs' brief in support of their motion to compel asserts that Plaintiffs have offered to "narrow" the scope of Requests for Production Nos. 3 and 22, but this assertion obscures Plaintiffs' actual intent. Plaintiffs have made clear at various junctures during the meet-and-confer process that where they have proposed to limit the categories of documents they are seeking in the near term, Plaintiffs are reserving the right to seek other documents in the scope of their original requests at a later date. *See, e.g., id.* at ¶ 13. Thus, their

8

offers to "narrow" the scope of their requests have not been offers to compromise at all—they have merely been demands to produce a subset of requested documents coupled with an offer to defer the remainder of discovery requests until a later date. But, as explained below, even the more narrow approach is overbroad, does not seek relevant information, and is unduly burdensome. LabCorp therefore requests that the motion to compel be denied.

## ARGUMENT

### I. Plaintiffs' Motion Should be Denied as to Request for Production No. 3.

#### A. Plaintiffs have Misused the Discovery Process.

Request for Production No. 3 seeks:

> Agreements and negotiated rate schedules with Third-Party Payers that provide rates to be paid for lab services performed by LabCorp. Your response to this Request should include Documents and Communications sufficient to identify any formula or other method used to calculate payment rates for LabCorp's lab services that LabCorp has agreed to with any Third-Party Payer.

Plaintiffs' brief references Labcorp's response, but omits relevant portions. Labcorp's full response to this request states:

> LabCorp objects to the term "Third-Party Payers" as defined in the Discovery Requests. *See* Section II above. LabCorp further objects to the assumptions inherent in this request, including the assumption that LabCorp applies a formula to set the rates it charges to Third-Party Payers. LabCorp also objects

9

on the grounds that the request seeks confidential and proprietary information, including information that is protected by and/or subject to nondisclosure and/or confidentiality agreements. *See* Section I(F) above.[3]

Moreover, the request is overly broad, unduly burdensome, unreasonable, and is not proportional to the needs of the case. During ***each*** year of the "Relevant Time Period," LabCorp has maintained, on average, more than four thousand accounts with managed care organizations, ten thousand hospital accounts, and four hundred thousand accounts with physicians and/or physician groups. In this context, LabCorp performs over a half-billion tests annually and offers hundreds of thousands of tests and test combinations. It is not practicable—nor is it possible—for LabCorp to produce each and every of the requested "Document[s]" and "Communication[s]" (as defined in the Discovery Requests—*see* Section IV above) about its "lab services." LabCorp will not produce documents in response to this request.

The plain language of Plaintiffs' discovery request seeks contracts with more than four thousand accounts with managed care organizations, ten thousand hospital accounts, and four hundred thousand accounts with physicians and physician groups (*see* Labcorp's Response to Request for

---

[3] Section I(F) of Labcorp's Responses to Plaintiffs' First Set of Requests for Production states:

> LabCorp states that a number of the Discovery Requests appear to seek information that is confidential and/or proprietary to LabCorp, including, without limitation, trade secrets, certain pricing information (e.g., information as to manner in which, and the information considered when, LabCorp determines and/or adjusts its prices), business plans, strategic plans, financial data, sales and marketing strategies, information protected by and/or subject to nondisclosure or confidentiality agreements, and other non-public information of competitive and business sensitivity. Such information, if not otherwise objectionable, will be provided only after entry of an appropriate protective order.

10

Production No. 3 (<u>Exhibit 6</u>)), and seeks any such contract created in a period of time spanning more than a decade.  Producing all responsive documents would require review and production of hundreds of thousands of pages of documents regarding rates negotiated based on high volumes of orders and certainty (or near certainty) of payment.  At no point during the meet-and-confer process have Plaintiffs explained how such production is proportional to the needs of the case.

Plaintiffs have repeatedly reformulated this request and claim to have narrowed its scope.  Counsel for Plaintiffs have made similar proposals to change the scope of other overly-broad requests.  Specifically, Plaintiffs proposed to limit the scope of certain discovery requests about Labcorp's tests to its "top 100 most administered tests and test combinations and the top 100 tests and test combinations by revenue."  Letter from T. Brennan to C. Raynal, at p. 2 (April 29, 2020) (<u>Exhibit 7</u>).  However, in making this proposal, Plaintiffs' counsel made clear that they were not offering to forego a portion of the requested discovery, but merely to defer Labcorp's production of the balance of responsive documents to a later date:  "following the completion of class discovery, Plaintiffs will seek discovery on the remaining tests."  *Id.* at p. 2.  Given Plaintiffs' practice of offering to "resolve" discovery disputes by proposing to postpone collection of certain documents while demanding

11

immediate production of others, Labcorp is concerned that Plaintiffs will take the same approach with respect to the requests at issue in the motion. Stated otherwise, Labcorp understands that the proposals Plaintiffs have offered for Request for Production Nos. 3 and 22 are simply to postpone collection of the agreements not referenced in their proposal rather than to forego discovery of such documents altogether.

In any event, Plaintiffs' approach of serving a overbroad and burdensome request, followed by a series of offers to narrow the request, does not make Plaintiffs' narrowed request any more relevant. This is not the way discovery should be conducted, and Labcorp respectfully submits that the request should be denied on this basis alone.

### B. The Requested Documents are Not Relevant.

Plaintiffs' offer to "narrow" Request for Production No. 3 also does not cure the primary defect in the request, namely, that it is irrelevant to their claims.[4] While Plaintiffs correctly state that the concept of "relevance" under Rule 26 is broadly construed, this concept is not boundless. *See D'Addario v. Geller*, 129 F. App'x 1, 6 (4th Cir. 2005) (upholding district court's denial of

---

[4] Plaintiffs' assertion that Labcorp "has not objected to the relevance of the documents requested in Request Nos. 3 and 22" is unfounded. This assertion fails to acknowledge that Plaintiffs *never* served discovery requests for the narrowed sets of documents referenced in their motion. More importantly, when Plaintiffs first raised this issue in discovery conferences, Labcorp reiterated that it objected to the relevance of the documents.

12

motion to compel discovery with "minimal relevance" to the claims). As set forth above, insurance companies are at the polar opposite end of the spectrum from an uninsured patient (whose physician orders a single test or group of tests on his or her behalf). Large insurance companies pay Labcorp hundreds of millions of dollars for the many millions of covered tests their insureds obtain every year. As such, they are able to negotiate lower reimbursement rates for certain of Labcorp's clinical testing services. Moreover, these companies have proven track records of making prompt payment for services.

Were Plaintiffs, or other uninsured or underinsured patients, each able to guarantee similarly high levels of utilization for Labcorp's services and prompt payment, they too would be well-positioned to negotiate volume-based discounts. As is clear from the Amended Complaint, Plaintiffs and other members of the putative class do not and cannot make such guarantees.

Plaintiffs' suggestion that such patients are entitled to rates equal or similar to those paid by insurance companies (or some reformulation based on insurance company rates) ignores the vast difference between the two classes of payors. This suggestion also ignores the business reality that large insurance companies receive substantial consideration from insureds (or employers thereof) to negotiate special rates and to administer plan benefits

13

efficiently. Plaintiffs' suggested approach thus ignores the significant commercial value that insurance companies provide to their insureds.

Of all of the proxies Plaintiffs might use in an attempt to establish a so-called "reasonable" price for their tests, the rates negotiated with large insurance companies are the least appropriate, second only to Medicare reimbursement rates. Indeed, as Plaintiffs' brief acknowledges, the Court has already determined that "the rate LabCorp charges third-party payers may not be, as a matter of law, the reasonable value of LabCorp's services in every case." (Doc. 77 at 8.) The brief ignores, however, the Court's well-founded skepticism about how Plaintiffs "ultimately propose to calculate reasonable value." (Doc. 55 at 11.) Plaintiffs attempt instead to recast this skepticism as an endorsement of Plaintiffs' as yet undisclosed "formula to calculate the market rate for any given clinical lab test" to be developed by an undisclosed expert. *Id.* The Court's prior ruling and skepticism demand that Plaintiffs make a more compelling showing of the relevance of the requested information beyond their *ipse dixit* assertion of relevance. Plaintiffs have repeatedly declined to do so—both in response to Labcorp's discovery requests and in their briefing to the Court.

14

In an effort to distract the Court from their failure to articulate the relevance of the requested information, Plaintiffs cite three non-binding cases.[5] One of these—*Melo v. Allstate Ins. Co.*, 800 F. Supp. 2d 596, 602 (D. Vt. 2011), relied upon a Massachusetts case, which in turn interpreted and relied upon a Massachusetts evidentiary rule not applicable here. *See id.* (citing *Law v. Griffith*, 457 Mass. 349, 354, 930 N.E.2d 126, 131 (2010)). None of these cases explains how prices paid by such disparately positioned payors in the health care marketplace relate to one another, and the Court should decline to follow these cases here.

## C. The Request for Highly-Sensitive Commercial Documents is Not Proportional to the Needs of the Case.

As an additional safeguard against inappropriate and overbearing discovery, Rule 26(b)(1) requires that discovery sought be proportional to the needs of the case. Among the factors to be considered in determining whether a request meets this proportionality requirement are "the importance of the discovery in resolving the issues [ ] and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Both of these factors weigh against disclosure of the requested information.

---

[5] Labcorp considers *In re N. Cypress Med. Ctr., Ltd.*, 559 S.W. 3d 128 (Tex. 2018) and *E. Tex. Med. Ctr, Athens v. Hernandez*, No. 12-17-00333-CV, 2018 WL 2440508 (Tex. App.-Tyler May 31, 2018), to represent the same line of authority as the latter expressly relies on the former for its conclusion and holding.

15

Commercial insurers' agreements with Labcorp constitute proprietary and competitive information of both Labcorp and of the third-party insurers. The parties consider the contracts to be so commercially-sensitive that they require strict confidentiality provisions. In some instances, these provisions require prior notice to the insurance company, prior written consent of the insurance company, or (arguably) a court order compelling production before they may be disclosed. Dec. of K. Woodcock, dated May 12, 2021, at ¶¶ 4–5 (Exhibit 8). Apart from its closely-guarded intellectual property, the requested information is among the most highly-sensitive commercial information Labcorp possesses. *Id.* at ¶ 5. Even partial disclosure—however inadvertent— of this information by Plaintiffs would be detrimental to Labcorp's competitive advantage, its business relationships, and the businesses of the insurers. *Id.* at ¶ 6.

Requiring Labcorp not only to disclose such sensitive information, but also to navigate various confidentiality provisions in contracts that—as explained above—have no relevance (or, at best, minimal relevance) clearly outweighs the as-yet-undisclosed benefit of such information. Labcorp therefore requests that Plaintiffs' motion be denied as to Request No. 3.

16

## II. Plaintiffs' Motion Should be Denied as to Request for Production No. 22.

### A. Plaintiffs have Misused the Discovery Process.

Plaintiffs' Request for Production No. 22 seeks "Documents collected for and submitted to [the Centers for Medicare and Medicaid Services ("CMS")] to comply with federal regulations concerning the Clinical Laboratory Fee Schedule" spanning the course of a decade. Labcorp has, of course, made countless submissions to CMS that would be responsive to the request as drafted, which are wholly irrelevant to Plaintiffs' claims. As written, this request seeks any number of communications between Labcorp and CMS from a time period spanning over a decade and without specifying what substantive information Plaintiffs are actually seeking. Labcorp objected to this request, stating:

> LabCorp objects to this request on the grounds that it is overbroad, unduly burdensome, and is nothing more than an impermissible "fishing-expedition-style" discovery request.
>
> LabCorp further objects on the grounds that this request is vague and ambiguous. The term "Clinical Laboratory Fee Schedule" is undefined. LabCorp has submitted numerous categories of documents for various parties to different divisions of "CMS" that pertain to diagnostic tests, including the hundreds of thousands of tests and test combinations offered by LabCorp. This request does not provide any reasonable limitation on scope, time, or subject matter.

17

> Moreover, LabCorp also objects to the extent the request seeks confidential and proprietary information. *See* Section I(F) above. LabCorp will not produce documents in response to this request.

More than four months after receiving Labcorp's response to this request, Plaintiffs claimed that they were seeking "only the information LabCorp reports to the Center for Medicare and Medicaid services that pertains to *pricing*." Letter from T. Brennan to C. Raynal, at p. 3 (July 17, 2020) (Exhibit 9). This "clarification" did not cure the objectionable nature of Plaintiffs' initial discovery request. Nearly all communications with CMS pertain, in some manner, to "pricing."

Still later, during a discovery conference conducted approximately ten months after receiving Labcorp's discovery responses and after the parties conducted numerous conferences and negotiations regarding discovery served on both Plaintiffs and on Labcorp—Plaintiffs informed Labcorp for the first time that what they *actually* wanted was Labcorp's submissions to the federal government under a statute known as the Protecting Access to Medicare Act ("PAMA"). Declaration of S. Bayzle, dated May 12, 2021, at ¶ 15 (Exhibit 5). Plaintiffs claimed that this request was subsumed in their prior request and declined to serve a separate request for production for these documents in their Second Set of Requests for Production (served on February 19, 2021). At no

18

time before filing their motion to compel did Plaintiffs provide a written explanation for why the documents requested are relevant or how they might support Plaintiffs' claims.

To date, Plaintiffs have not served a proper discovery request seeking this information. Thus, Plaintiffs seek to compel a response to a discovery request that they never served. This is not the way discovery should be conducted, and Labcorp respectfully submits that the request should be denied on this basis alone.

## B.    The Requested Documents are Not Relevant.

The named Plaintiffs in this case are, of course, not the federal government. They do not pay for millions of tests per year from Labcorp. The manner in which the federal government unilaterally sets its own reimbursement rates for health care is irrelevant to Plaintiffs' claims. Plaintiffs' request for Labcorp's PAMA submission suffers from the same critical defect as its request for Labcorp's agreements and negotiated rate schedules with insurers: the data requested is simply not relevant to their claims for the reasons set forth in Section I.B (above). As the requested information is irrelevant to Plaintiffs' claims, their motion to compel should be denied.

19

## C.   The Request for Highly-Sensitive Commercial Documents is Overbroad and is Not Proportional to the Needs of the Case.

As with Request for Production No. 3, even Plaintiffs' "narrowed" request remains overbroad and disproportionate to the needs of the case. In reporting data to CMS to comply with PAMA, Labcorp submitted data for fourteen separate TIN-level companies with a total of 109 separate laboratories within their purview. Exhibit 3 at 114:16 – 118:19. The named Plaintiffs are but fourteen in number and their tests were sent to only a small subset of these laboratories. Similarly, the named Plaintiffs collectively obtained only a few unique tests from Labcorp, yet now seek information for thousands of HCPCS codes for which Labcorp reported data. Plaintiffs have yet to explain how their request—which they now characterize as "limited"—for information related to laboratories that did not perform their tests and for information related to tests they did not obtain is not overly-broad.

Furthermore, as explained in Section I.C (above), the requested information is highly-sensitive both to Labcorp and to the payors whose data is included in the PAMA submission. Indeed, in enacting PAMA, Congress codified protections for this data. *See* 42 U.S.C. § 1834A (1395m) (a)(10)–(11). Given the foregoing considerations, Plaintiffs' request is clearly not

20

proportional to the needs of the case, and Plaintiffs' motion to compel should be denied as to Request No. 22 as well.

## CONCLUSION

For all these reasons, Plaintiffs' motion to compel should be denied in its entirety.

Respectfully submitted this the 12th day of May, 2021.

/s/ Charles E. Raynal IV

Charles Raynal (N.C. Bar No. 32310)
Scott E. Bayzle (N.C. Bar No. 33811)
PARKER POE ADAMS & BERNSTEIN
LLP
301 Fayetteville Street, Suite 1400
Raleigh, North Carolina  27601
Phone: (919) 828-0564
Email: charlesraynal@parkerpoe.com
        scottbayzle@parkerpoe.com

Heather M. O'Shea
JONES DAY
77 West Wacker Drive
Chicago, Illinois  60601-1692
Phone:     (312) 782-3939
Email:     hoshea@jonesday.comB.

Aaron M. Healey
JONES DAY
250 Vesey Street
New York, New York 10218
Phone: (212)326-3811
Email:     ahealey@jonesday.com
*Attorneys for Defendant Laboratory Corporation of America Holdings*

21

## **CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that the foregoing brief complies with the type-volume limitation provided in Local Rule 7.3(d).  The foregoing brief contains fewer than 6,250 words in Century Schoolbook (13-point) proportional font. The word processing software used to prepare this brief was Microsoft Office 365 and the software was used to perform the word count.

/s/ Charles E. Raynal IV

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the following counsel of record:

> Jonathan Drew Sasser
> ELLIS & WINTERS, LLP
> 4131 Parkdale Avenue, Ste. 400
> Raleigh, NC 27612
> Email: jon.sasser@elliswinters.com

> Robert C. Finkel
> WOLF POPPER LLP
> 845 Third Avenue 12th Floor
> New York, NY 10022
> Email: rfinkel@wolfpopper.com

This the 12th day of May, 2021.

> /s/ Charles E. Raynal IV
> Charles E. Raynal, IV (N.C. Bar No. 32310)
> Parker Poe Adams & Bernstein LLP
> 301 Fayetteville Street, Suite 1400
> Raleigh, North Carolina  27601
> Phone: (919) 828-0564
> Email: charlesraynal@parkerpoe.com

23