IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| SHERYL ANDERSON, MARY CARTER, TENA DAVIDSON, ROBERT HUFFSTUTLER, RAMZI KHAZEN, CHAIM MARCUS, LILY MARTYN, JONAH MCCAY, HOLDEN SHERIFF, VICTORIA SMITH, MICHELLE SULLIVAN, SHONTELLE THOMAS, JOSEPH WATSON, and MICHAEL WILSON, individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>LABORATORY CORPORATION OF AMERICA HOLDINGS,<br><br>   Defendant. | Case No. 1:17-cv-193-TDS-JLW |

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER
SUPPORT OF MOTION TO COMPEL DOCUMENTS**

**PRELIMINARY STATEMENT**

This action concerns the "list prices" defendant Laboratory Corp. of America Holdings ("LabCorp"), charges patients when insurance denies coverage. Plaintiffs allege that they, and other members of the putative class, had no agreement on price and that in the absence of such an agreement, LabCorp cannot charge Plaintiffs more than a reasonable price for their lab tests. *See* Amended Complaint at Dkt. 42. Plaintiffs' claims, that LabCorp charges them and other members of the putative class an unreasonable rate, were sustained in part and denied in part by Chief Judge Schroeder.

1

Among other things, Chief Judge Schroeder found that LabCorp failed to meet "the demanding standard of showing that Plaintiffs' class allegations should be struck" (Dkt. 55 at 28) and that Plaintiffs were entitled to offer evidence in support of class certification at "'an evidentiary hearing' ... prior to certification." *Id.*

Plaintiffs seek to compel two categories of documents relevant to their claims that LabCorp failed to charge a reasonable price for its lab tests. Those documents are necessary for the Court to conduct the "evidentiary hearing" envisioned by Chief Judge Schroeder.

Yet LabCorp's Response to the Motion to Compel ignores the liberal standards for conducting discovery under Fed. R. Civ. P. 26(f)(1). *See* cases cited in Plaintiffs' Opening Mem., establishing that the party resisting discovery has the burden of demonstrating the lack of relevance. Dkt. 77 at 6-7. Rather, LabCorp seeks to substitute the more stringent standard of a motion to strike class allegations or a motion *in limine* under the Rules of Evidence, which seeks to bar Plaintiffs from introducing evidence disclosed in discovery at trial. In fact, LabCorp's opposition to the Motion to Compel is just the mirror image of its denied motion to strike class allegations, where Chief Judge Schroeder held that Plaintiffs were entitled to discovery on the various rates that LabCorp charges for its services (Dkt. 55 at 29-30):

> Plaintiffs do not commit themselves to any one of these theories to the exclusion of others, representing instead that they "anticipate relying upon an expert to analyze" cost and price data obtained through discovery "to develop a formula to calculate the market rate for any given clinical lab test." (id. ¶ 110.) Vague though this proposal may be, LabCorp does not explain why Plaintiffs should be required to enunciate a specific valuation theory in their initial pleadings — especially when Plaintiffs lack the data

2

on which they intend to rely and have not had any opportunity for discovery.

Because the requested discovery clearly meets the standards for compelling discovery under Rule 26, Plaintiffs' Motion to Compel should be granted.

## ARGUMENT

### I. THE DOCUMENTS AT ISSUE ARE RELEVANT

Plaintiffs seek production of two categories of documents. First, they seek LabCorp's agreements and negotiated rates with Plaintiffs' insurers. RFP 3. The agreements are relevant because they will establish (i) the rates LabCorp was willing to accept from Plaintiffs' insurers, (ii) the basis for those negotiated rates and (iii) whether the agreements address whether and under what circumstances LabCorp can charge an insured patient a list price. For example, those agreements may establish that LabCorp negotiates rates with insurers based on a discount to what Medicare pays for those same services. Those negotiated contracts would establish that Medicare rates are higher (and perhaps substantially higher) than third-party insurer rates, and that the Medicare rates can be used as a guidepost by the Court for establishing market rates.

Second, Plaintiffs seek to compel the production of documents submitted to the Centers for Medicare & Medicaid Services ("CMS") (RFP 22) in connection with its rate making authority under the Protecting Access to Medicare Act ("PAMA"). In the mid-2010s, Congress and CMS passed laws and regulations requiring lab companies such as LabCorp to submit information on the rates LabCorp accepted for its services from third-party insurers. CMS compiled the data submitted by LabCorp (along with submissions of

3

other private laboratories) for the database used to set Medicare reimbursement rates. *See* Amended Complaint (Dkt. 42), ¶¶ 89-98. The rates in the PAMA data are relevant because they will show the full range of rates LabCorp was willing to accept from the vast majority of insurers.[1] For example, the PAMA data (produced electronically) can be used to show, among other things, LabCorp's average and median reimbursement rates by CPT code, as well as whether *any* insurer pays patient list price. Defendants are fighting hard to avoid producing the data precisely because of its significance to Plaintiffs' proof.

Plaintiffs do not need to contend that Plaintiffs should pay the same rates that LabCorp was paid by third-party insurers for the insurance rates to be relevant. Rather, Plaintiffs can argue that insurance rates should be considered along with other rates, such as internet prices through LabCorp's online Pixel service, rates charged to physicians and hospitals, and rates charged uninsured patients pursuant to LabCorp's LabAccess Partnership Program ("LAP"). Plaintiffs recognize that prices charged by LabCorp in these different markets may vary and will seek to introduce evidence with respect to

---

[1] LabCorp argues that Medicare rates and third-party insurance rates are not indicative of market rates because there is no risk of non-payment. Opposition Mem. (Dkt. 78) at 5. However, it is LabCorp that chooses not to require prepayment or security for its services. Having failed to secure payment in advance, LabCorp should not be allowed to complain about the risk of nonpayment. That however is a merits issue. LabCorp's arguments as to whether the Court or jury will ultimately determine that the insured rates are or are not representative of patient list prices is not relevant to this discovery motion, which seeks to marshal the evidence necessary for Plaintiffs to make their proof. *Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 124 (M.D.N.C. 1989) ("Relevancy is to be broadly construed for discovery purposes and is not limited to the precise issues set out in the pleadings or to the merits of the case").

4

LabCorp's internal considerations regarding how it sets prices.[2] But as Chief Judge Schroeder held (*see supra* at 2-3), Plaintiffs are entitled to offer proof on the relationship between the various rates LabCorp charges and market rates. And to do that, Plaintiffs need the information sought herein to establish LabCorp's customary rates for lab services.

    LabCorp argues that the information sought in RFP Nos. 3 and 22 is irrelevant because insurance companies can negotiate rates while individual patients cannot and insurance companies are more likely to pay promptly than individual patients, who may not pay at all. Dkt. 78 at 13. If that argument were valid, the cases Plaintiffs cite holding that the information Plaintiffs seek is discoverable would not have been decided as they were. *See* Plaintiffs' Memorandum of Law (Dkt. 77 at 8-10), *citing,* among other cases, *In re N. Cypress Med. Ctr., Ltd.*, 559 S.W.3d 128 (Tex. 2018). LabCorp essentially ignores this precedent and their reasoning, and does not provide any contrary authority.

    In any event, in a listing of the factors "most commonly considered" in setting patient list price contained in LabCorp's answers to interrogatories (Dkt. 78-2, answer to interrogatory No. 6, pp. 13-16), *LabCorp does not state that risk of nonpayment from individual patients is a factor*.

    Moreover, while LabCorp suggests that the prices it negotiates with insurance companies takes into account a "volume-based value proposition" unlike with individual

---

[2] Plaintiffs do not foreclose the possibility that LabCorp is entitled to a reasonable multiple to insured rates when they charge individual clients a patient list price. However, to make that assessment, Plaintiffs need to know what those insured rates are and how they were determined.

5

patients and therefore insurance rates are not relevant, in fact LabCorp employee Nikki Robertson testified that "payer mix" (*i.e.*, who is paying – an insurance company, a hospital, an individual patient, etc.) is *not* taken into account when setting patient list prices. Tr. at 177:21-178:20.[3] *See also* Robertson Tr. at 65:17-23 (testifying that LabCorp does not "consider the risk of non-payment for people who pay list price to be different than the risk of non-payment for commercial insurance.") at 66:18-23 (testifying that she has "not seen" "any analysis" of the "risk of non-payment" of patients billed a patient list price).

LabCorp also argues that the PAMA data are irrelevant because the manner in which the federal government sets Medicare rates is different than pricing of individual lab tests. *See, e.g.,* Dkt. 78 at 14. This misses the point: the PAMA data contains information on what LabCorp accepts as payment for its lab tests from health insurers, which, as the cases Plaintiffs cite show, will help establish a reasonable rate for the tests.

## II. THE REQUESTS ARE NOT BURDENSOME

While LabCorp seems to suggest that Plaintiffs' requests are burdensome, that is not so. Plaintiffs are not seeking a large volume of documents. With respect to RFP 3, Plaintiffs seek only LabCorp's agreements (and any agreements that are incorporated by reference) and negotiated rates with the named Plaintiffs' insurers at the time of the tests

---

[3] Relevant pages from the Robertson transcript are annexed as Exhibit B to the accompanying Reply Declaration of Jonathan Sasser ("Sasser Reply Decl.").

6

at issue in this case. Dkt. 77 at 4, 7; *see also* Dkt. 75 at ¶13.[4] Of the twelve remaining class representative Plaintiffs, three had a common insurer (BlueCross BlueShield of Alabama) and three were either out-of-network or uninsured. Thus, at most, Plaintiffs seek just seven contracts between LabCorp and insurers.

With respect to RFP 22, LabCorp attempts to create confusion over the scope of this significantly narrowed Request by referencing fourteen "TIN-level companies" and additional sub-laboratories. Dkt. 78 at 20. However, a LabCorp-designated deponent testified that the PAMA data is retrievable in only fourteen data files, Deposition of LabCorp 30(b)(6) deponent Kathy Woodcock, 115:5 (Sasser Reply Decl., Ex. C), and so producing the requested information is not burdensome.[5]

Plaintiffs also note that LabCorp did not submit any declaration setting forth facts to demonstrate that the narrowed requests are objectionably burdensome. *See Hake v. Carroll County, Md.*, Civil Case No. WDQ-13-1312, at *8, 2014 WL 3974173 (D. Md. August 14, 2014) (rejecting burdensome objection where "Defendants have not asserted

---

[4] LabCorp has already produced the agreements that were in place with the named Plaintiffs' medical providers at the time of the testing at issue. *See* Sasser Reply Decl., ¶ 5. It strains credulity that producing agreements and negotiated rates with the named Plaintiff's insurers is burdensome whereas producing agreements with their medical providers is not.

[5] These files are clearly not difficult to access. Ms. Woodcock testified that LabCorp compiled data in one or more spreadsheets. Exhibit C (Woodcock Tr. at 106:13). Ms. Woodcock also testified that in advance of her deposition, another LabCorp employee showed her the spreadsheet during a routine video conference call from his computer. *Id.* at 108:4.

7

specific facts, through affidavit or otherwise, to demonstrate the nature or extent of the burden").

## III. LABCORP CANNOT WITHHOLD DOCUMENTS BY CLAIMING CONFIDENTIALITY

LabCorp argues that producing any documents in response to Request No. 3 poses a risk that sensitive information with respect to negotiated rates could be disclosed and would harm both LabCorp and the private insurers with whom LabCorp has agreements. However, the parties negotiated a Protective Order prior to the commencement of discovery (Dkt. 62). The Protective Order provides that LabCorp can designate materials it produces as "confidential" or "highly confidential." (*Id.* at ¶ 5.1). Material can be designated as highly confidential if the "producing party reasonably believes that the disclosure of such Discovery Material is likely to cause significant economic harm or significant competitive disadvantage to the Producing Party, such information may include … *pricing information*." (*Id.* ¶ 7.1) (emphasis supplied). Of course, courts routinely compel a party to produce documents to a competitor, *see, e.g., Addi v. Corvias Mgmt.-Army, LLC,* Civil Action No. EL- 19-3253, at *2, 2020 WL 7707039 (D. Md. December 28, 2020), and here Plaintiffs are not even competitors.

In addition, the declaration of Ms. Woodcock that LabCorp submitted only says that "*[m]any* of LabCorp's" contracts with insurers contain confidential provisions prohibiting LabCorp from disclosing information without written authorization (Dkt. 78-9, ¶ 4, emphasis added). It does *not* say that *Plaintiffs' insurers* (or all such insurers)

8

have such contracts with confidentiality provisions. Ms. Woodcock acknowledges that such contracts allow for disclosure when "disclosure is legally required." *Id.*

Significantly, here, LabCorp served its main competitor–Quest Diagnostics, Inc.–with a subpoena seeking similarly confidential information concerning Quest's patient list prices. *See* Sasser Reply Decl., ¶ 4, and Exh. D.

Moreover, certain of the information contained in contracts between LabCorp and insurers, *e.g.*, the rates for services, are routinely disclosed in insurance company Explanations of Benefits mailed to insurance subscribers, and is information submitted to CMS.[6]

## IV. NARROWING OF THEIR REQUESTS IS NOT A "MISUSE OF THE DISCOVERY PROCESS"

LabCorp's argument that Plaintiffs "misused the discovery process" does not make sense. LabCorp objected to RFP Nos. 3 and 22 and, after an extensive series of conferences, Plaintiffs narrowed without prejudice the requests. Plaintiffs are moving to compel those narrowed requests, not the original ones. LabCorp turns LR 37.1(a) on its head by suggesting that by engaging in an effort to resolve a discovery dispute Plaintiffs somehow did something improper. *See* Dkt. 78 at 8-12.

Nor is there anything wrong with Plaintiffs seeing what documents are produced now and determining later whether to seek additional documents under the RFPs,

---

[6] LabCorp cites 42 U.S.C. §1834A (1395m) (a)(10)-(11) for the proposition that "in enacting PAMA, Congress codified protections for this data." However, those protections are qualified and subject to the discretion of the Security of Health and Human Services. *Id.* And again, any such disclosure would be subject to the Protective Order.

9

Case 1:17-cv-00193-TDS-JLW   Document 80   Filed 05/26/21   Page 9 of 12

particularly in light of the fact that the additional documents may be sought after the class certification motion is decided. Plaintiffs are unaware of any authority disallowing such a process, and LabCorp does not cite to any authority to support its all-or-nothing approach to resolving discovery disputes. Plaintiffs have no current intention of seeking a broader universe of insurance contracts than contracts with the named Plaintiffs, but if they do, that request will be dealt with on the merits and without any prejudice to LabCorp from complying with the more narrow requests.[7]

## CONCLUSION

Plaintiffs respectfully request that the motion be granted.

Dated: May 26, 2021

ELLIS & WINTERS LLP

By: */s/ Jonathan D. Sasser*
Jonathan D. Sasser
N.C. State Bar No. 10028
P.O. Box 33550
Raleigh, North Carolina 27636
Telephone Number: (919) 865-7000
Facsimile Number: (919) 865-7010
jon.sasser@elliswinters.com

*Liaison Counsel for Plaintiff and the Putative Plaintiff Class*

---

[7] LabCorp contends (Dkt. 78 at 19), that Plaintiffs failed to "provide a written explanation for why" Plaintiffs' narrowed request for CMS data is "relevant or how they might support Plaintiffs' claims." Rather, the matter was discussed on a January 12, 2021 meet and confer conference call where Plaintiffs advised LabCorp that the CMS data gives Plaintiffs a broad benchmark of prices. *See* Sasser Reply Decl., ¶ 6.

10

OF COUNSEL:

Robert C. Finkel
Matthew Insley-Pruitt
David Nicholas
Tim Brennan
WOLF POPPER LLP
845 Third Avenue, 12th Floor
New York, New York 10022
Telephone Number: (212) 759-4600
Facsimile Number: (212) 486-2093
rfinkel@wolfpopper.com

*Counsel for Plaintiff and the Putative Plaintiff Class*

11

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3(d)

The undersigned hereby certifies that this brief complies with the word limit requirements of Rule 7.3(d)(1) of the Rules of Practice and Procedure of the United States District Court for the Middle District of North Carolina. In making this certification, the undersigned has relied upon the word-count feature of word-processing software.

/s/ *Jonathan D. Sasser*
Jonathan D. Sasser
N.C. State Bar No. 10028
ELLIS & WINTERS LLP
P.O. Box 33550
Raleigh, North Carolina 27636
Telephone Number: (919) 865-7000
Facsimile Number: (919) 865-7010
jon.sasser@elliswinters.com